**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

JENNIFER MILLER,              )
                                   )
         Plaintiff,        )
                                   )
     v.                   )
                                   )     Judge John R. Adams
MICHAEL J. ANDERSON, *et al.*,  )
                                   )     Case No. 5:20-cv-01743-JRA
         Defendants,    )
                                   )
     and                 )
                                   )
FIRSTENERGY CORP.,       )
                                   )
         Nominal Defendant.  )
                                   )

**REPLY MEMORANDUM IN SUPPORT OF
<u>THE DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

Geoffrey J. Ritts (0062603)
Robert S. Faxon (0059678)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Email: gjritts@jonesday.com
Email: rfaxon@jonesday.com

Marjorie P. Duffy (0083452)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215
Telephone: (614) 469-3939
Facsimile: (614) 461-4198
Email: mpduffy@jonesday.com

*Attorneys for Defendants Michael J.
Anderson, Steven J. Demetriou, Julia L.
Johnson, Donald T. Misheff, Thomas N.
Mitchell, James F. O'Neil, III, Christopher
D. Pappas, Sandra Pianalto, Luis A. Reyes,
Leslie M. Turner, Steven E. Strah, Robert
Reffner, and Ebony Yeboah-Amankwah and
Nominal Defendant FirstEnergy Corp.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

SUMMARY OF ARGUMENT AND ISSUES (L.R. 7.1) ........................................... v

ARGUMENT .................................................................................................................. 1

I.     The Court Should Dismiss The Complaint Because Plaintiff Failed To Make A Pre-Suit Demand And Therefore Lacks Standing To Sue On FirstEnergy's Behalf ......... 1

    A.    Plaintiff Invites Legal Error By Invoking The Wrong Legal Standards ................ 1

    B.    The Complaint Fails To Plead With Particularity Those Demand-Futility "Excuses" That Plaintiff Has Not Abandoned ........................................................ 3

        1.    Allegations About Committee Service Do Not Excuse Demand ............. 4

        2.    Conclusory Assertions That the Directors Are "Oppos[ed] To Transparency" Do Not Demonstrate Demand Futility ............................. 8

        3.    Naming All The Directors As Defendants Does Not Excuse Demand ................................................................................................. 9

    C.    Recent Developments Do Not Show Demand Futility ....................................... 14

CONCLUSION .............................................................................................................. 16

CERTIFICATE OF SERVICE

C<small>ASES</small>

*Allstate Ins. Co. v. Glob. Med. Billing, Inc.*,
   520 F. App'x 409 (6th Cir. 2013) ...................................................................4, 14

*Bartesch v. Cook*,
   941 F. Supp. 2d 501 (D. Del. 2013) .......................................................................2

*Bates v. Green Farms Condo. Ass'n*,
   958 F.3d 470 (6th Cir. 2020) ...............................................................................14

*Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*,
   2012 WL 1030474 (N.D. Ill. Mar. 27, 2012) ..........................................................2

*Conley v. Gibson*,
   355 U.S. 41 (1957) .................................................................................................1

*Derrico v. Moore*,
   2019 WL 1876960 (N.D. Ohio Apr. 25, 2019) .....................................................14

*Engler v. Arnold*,
   209 F. Supp. 3d 988 (N.D. Ohio 2016), *aff'd*, 862 F.3d 571 (6th Cir. 2017) ...........4

*Fradkin v. Ernst,*
   571 F. Supp. 829 (N.D. Ohio 1983) .....................................................................12

*Gen. Elec. Co. v. S & S Sales Co.*,
   2012 WL 2921566 (N.D. Ohio Jul. 17, 2012) ......................................................14

*Heinrich v. Waiting Angels Adoption Servs., Inc.*,
   668 F.3d 393 (6th Cir. 2012) ...............................................................................14

*In re Citigroup Inc. S'holder Deriv. Litig.*,
   964 A.2d 106 (Del. Ch. 2009) ...............................................................................8

*In re Ferro Corp. Deriv. Litig.*,
   2006 WL 2038659 (N.D. Ohio Mar. 21, 2006),
   *aff'd*, 511 F.3d 611 (6th Cir. 2008) ............................................................ *passim*

*In re Ferro Corp. Deriv. Litig.*,
511 F.3d 611 (6th Cir. 2008) .................................................................. iv, 2, 4, 12

*In re FirstEnergy Corp. S'holder Deriv. Litig.*,
320 F. Supp. 2d 621 (N.D. Ohio 2004).................................................................12

*In re Gas Natural, Inc.*,
2015 WL 3557207 (N.D. Ohio June 4, 2015).......................................................13

*In re Goodyear Tire & Rubber Co. Deriv. Litig.*,
2007 WL 43557 (N.D. Ohio Jan. 5, 2007).................................................. *passim*

*In re GoPro, Inc.*,
2020 WL 2036602 (Del. Ch. Apr. 28, 2020) ........................................................5

*In re Keithley Instruments, Inc., Deriv. Litig.*,
599 F. Supp. 2d 875 (N.D. Ohio 2008)................................................................3

*In re Massey Energy Co. Deriv. & Class Action Litig.*,
2011 WL 2176479 (Del. Ch. May 31, 2011)........................................................6

*In re Pfizer Inc., S'holder Deriv. Litig.*,
722 F. Supp. 2d 453 (S.D.N.Y 2010)................................................................2

*Jergens v. Ohio Dep't of Rehab. & Corrs. Adult Parole Auth.*,
492 F. App'x 567 (6th Cir. 2012).......................................................................14

*McCall v. Scott*,
239 F.3d 808 (6th Cir. 2001) .................................................................. *passim*

*Monday v. Meyer*,
2011 WL 5974664 (N.D. Ohio Nov. 29, 2011)......................................4, 7, 10, 13

*Powell v. Wal-Mart Stores, Inc.*,
303 F. App'x 284 (6th Cir. 2008) .......................................................................4

*Robinson Family Trust v. Greig*,
2013 WL 1943330 (N.D. Ohio May 10, 2013)................................................8, 9

*Shaev v. Baker*,
2017 WL 1735573 (N.D. Cal. May 4, 2017).......................................................11

*South v. Baker*,
62 A.3d 1 (Del. Ch. 2012)................................................................................11

*Stanley v. Arnold*,
    2012 WL 5269147 (S.D. Ohio Oct. 23, 2012),
    *aff'd*, 531 F. App'x 695 (6th Cir. 2013)........................................................2, 4, 11

**STATUTES AND RULES**

R.C. § 1701.59(A)............................................................................................ iv, 1

R.C. § 1701.59(D)............................................................................................1, 12

R.C. § 1701.59(E) .......................................................................................... iv, 1, 3, 9

R.C. § 1701.59 (1986 Committee Comment) ........................................................8, 12

Fed. R. Civ. P. 23.1 ..........................................................................................1, 2

<u>**SUMMARY OF ARGUMENT AND ISSUES (L.R. 7.1)**</u>

Plaintiff's opposition brushes aside the crucial point that requires the Complaint to be dismissed: the complete absence of particularized facts in the Complaint demonstrating that a majority of the Directors ever acted with a deliberate intent to harm FirstEnergy or with reckless disregard for its interests.[1]

"Ohio law statutorily embraces the bedrock principle[] that 'the business and affairs of a corporation are managed by and under the direction of its board.'" *In re Ferro Corp. Deriv. Litig.*, 2006 WL 2038659, at *5 (N.D. Ohio Mar. 21, 2006) ("Ferro I"), *aff'd*, 511 F.3d 611 (6th Cir. 2008) ("Ferro II"); *see also* R.C. § 1701.59(A). That means the FirstEnergy board must be given "the first opportunity" to consider whether to cause the Company to pursue a legal claim, and requires a shareholder, like Plaintiff, to submit a pre-suit demand to the board. *Ferro II*, 511 F.3d at 618. As this Court observed, the demand requirement "serves the very important purpose of ensuring that before a shareholder derivative suit is brought, the company's board of directors has considered all possible intracorporate remedies." *In re Goodyear Tire & Rubber Co. Deriv. Litig.*, 2007 WL 43557, at *3 (N.D. Ohio Jan. 5, 2007) (Adams, J.).

To show demand futility and avoid dismissal for lack of standing, Plaintiff must show that at least half of the Company's board faces a substantial likelihood of personal liability in this lawsuit under Ohio's stringent standard for director liability. In Ohio, directors are liable to the company only if they acted "with deliberate intent to cause injury to the corporation" or "with reckless disregard for the best interests of the corporation," and then only if that misconduct is "proved by clear and convincing evidence." R.C. § 1701.59(E). To establish that FirstEnergy's

---

[1] Capitalized terms have the meanings given to them in the Defendants' opening brief in support of their motion to dismiss (Doc. #44-1), which we refer to as "Br." Plaintiff's opposition to the Defendants' motion to dismiss (Doc. #50) is referenced as "Opp'n."

board could not have considered a pre-suit demand, Plaintiff must plead—with particularized facts on a director-by-director basis—that at least six Directors are "substantially likely" to be held personally liable under that very high standard. The Complaint does not come close to satisfying this requirement.

Plaintiff has narrowed the issues for this Court to consider by implicitly conceding that the majority of her proffered excuses do not show that a pre-suit demand would have been futile. As to those few excuses that Plaintiff has not abandoned, there are no particularized factual allegations showing that FirstEnergy's overwhelmingly independent board could not have exercised its business judgment if presented with a pre-suit demand. The "new facts" that Plaintiff proffers at the end of her brief do not alter that conclusion.

There is only one question presented: are there particularized facts in the Complaint showing that at least six of the Directors are substantially likely to be shown, by clear and convincing evidence, to have acted with intent to harm the Company or to have recklessly disregarded its interests? Because the answer is a resounding "no," the Complaint must be dismissed.

## ARGUMENT

**I.**   **The Court Should Dismiss The Complaint Because Plaintiff Failed To Make A Pre-Suit Demand And Therefore Lacks Standing To Sue On FirstEnergy's Behalf.**

    **A.**   **Plaintiff Invites Legal Error By Invoking The Wrong Legal Standards.**

Plaintiff largely does not dispute the governing legal standards here, but a few points require clarification or correction.  First, Plaintiff does not, and cannot, dispute:

- The "bedrock principle" that FirstEnergy's board manages the business and affairs of the Company, including the decision to file a lawsuit asserting a corporate claim.  (Br. at 3-4.)

- The board must be given "the first opportunity" to bring suit, and no shareholder—including Plaintiff—has the independent right to sue on a claim that belongs to the Company.  (Br. at 4.)

- Each of the Directors is presumed to have acted in good faith and for the Company's benefit.  (Br. at 13 n.7.)

- Courts and Ohio law presume directors can exercise independent, unbiased business judgment about whether it would be in the company's best interests to sue some or all of the directors.  *Goodyear*, 2007 WL 43557, at *10; R.C. § 1701.59(D).

- FirstEnergy's board is entitled to a heightened presumption that it could have considered a demand because ten of its eleven members were outside, independent directors and not FirstEnergy employees.  (Br. at 5.)

- A failure to comply with Rule 23.1 means Plaintiff lacks standing to sue on the Company's behalf.  (Br. at 5.)

Plaintiff, however, improperly waters down or ignores other key standards (Opp'n at 6-7), and thus invites error.  To start, she misstates the pleading standard applicable to demand futility, incorrectly asserting that the Complaint cannot be dismissed unless Defendants have shown that Plaintiff "can prove no set of facts entitling the plaintiff to relief."  (*Id.* at 6.)  For that proposition, she cites a pre-*Twombly* case, which in turn cites the defunct "conceivability" standard of *Conley v. Gibson*, 355 U.S. 41 (1957).  (*Id.*)  Pleading demand futility, however, "differs substantially from the principles of notice pleading."  *Ferro I*, 2006 WL 2038659, at *3.

The law is clear that demand futility must be pled "with particularity," *Goodyear*, 2007 WL 43557, at *3, and that "[i]f Plaintiff[] do[es] not comply with the requirements of Rule 23.1, [she] do[es] not have standing to bring suit," *Ferro II*, 511 F.3d at 617. This Court should reject Plaintiff's invitation to apply the wrong pleading standard.

Plaintiff does not address that courts in this Circuit uniformly hold that lumping together the "Director Defendants" into an undifferentiated wrongdoing mass does not satisfy Rule 23.1. (*See* Br. at 6-7 (citing, among others, *Goodyear*, 2007 WL 43557, at *4).) Instead, she cites out-of-circuit authority to try to justify the Complaint's failure to plead demand futility on a director-by-director basis. (Opp'n at 15 (citing *In re Pfizer Inc., S'holder Deriv. Litig.*, 722 F. Supp. 2d 453 (S.D.N.Y 2010).) But the law is clear in this Circuit: "A derivative plaintiff must allege particularized facts as to each director, demonstrating why he or she is unable to consider a demand." *Stanley v. Arnold*, 2012 WL 5269147, at *7 (S.D. Ohio Oct. 23, 2012) (rejecting argument that a plaintiff "is not required to plead demand futility on a director-by-director basis"), *aff'd*, 531 F. App'x 695 (6th Cir. 2013).

Plaintiff argues that Defendants have improperly "compartmentaliz[ed]" the Complaint's allegations and that the Court should instead consider the "accumulation" of all allegations. (Opp'n at 8 n.12; *see also id.* at 7, 16, 17.) Defendants never suggested otherwise; rather, the Complaint's allegations, "whether considered individually or collectively … are insufficient to excuse demand under the particularity requirement." *Ferro I*, 2006 WL 2038659, at *8.[2]

---

[2] In circumstances requiring particularized pleading, courts recognize that where the allegations individually are insufficient, they are no more viable considered together: "zero plus zero [plus zero] equals zero." *Bartesch v. Cook*, 941 F. Supp. 2d 501, 508, 510 (D. Del. 2013) (alteration in original; dismissing complaint for failure to plead with particularity where allegations were "generalized and conclusory"). *See also Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*, 2012 WL 1030474, at *4 (N.D. Ill. Mar. 27, 2012) (no inferences can be drawn "from allegations that are not themselves well pleaded; zero plus zero is zero").

Finally, Plaintiff erects a strawman argument that she is not required to show a "reasonable probability of success on the merits." (Opp'n at 7.) That misstates the applicable standard. Instead, Plaintiff's failure to make a pre-suit demand is excused only if the "particularized allegations in the complaint present 'a substantial likelihood' of liability" for a majority of the board. *In re Keithley Instruments, Inc., Deriv. Litig.*, 599 F. Supp. 2d 875, 890 (N.D. Ohio 2008) (cited at Br. at 9). And, under the Ohio director liability statute, a director is personally liable to the corporation only when "it is prov[en] by ***clear and convincing evidence***" that his or her action or failure to act was "undertaken with ***deliberate intent to cause injury to the corporation*** or undertaken with ***reckless disregard for the best interests of the corporation***." R.C. § 1701.59(E). Plaintiff does not acknowledge that the statute makes it very difficult to plead that a director of an Ohio company is substantially likely to be held personally liable for the matters alleged in a derivative complaint. (*See* Br. at 9-10.)

### B. The Complaint Fails To Plead With Particularity Those Demand-Futility "Excuses" That Plaintiff Has Not Abandoned.

Courts routinely reject the "excuses" that Plaintiff offered for her failure to make a pre-suit demand. (Br. at 6-20.) By and large, Plaintiff does not disagree. Specifically, Defendants demonstrated that the Complaint's assertions about alleged violations of internal policies (Br. at 14; ¶ 78, 84-85, 100), director compensation (Br. at 18-19; ¶ 126), "self-dealing" (Br. at 19; ¶ 115; *see also* ¶ 128), a lack of independence (Br. at 19-20; ¶ 129), directors serving on boards together (Br. at 20; ¶ 132), and the board having not filed a lawsuit yet (Br. at 19; ¶ 134), do not show demand futility.[3] Plaintiff offers no dispute or response as to these points, thus abandoning

---

[3] Plaintiff argues that demand is excused because, in light of the pending regulatory investigations and civil lawsuits, the Directors cannot "reasonably [be] expect[ed]" to bring suit against themselves. (Opp'n at 16.) But the existence of other regulatory or litigation matters is no exception to the rule that demand is not excused simply by asserting that directors would not want to sue themselves or have not yet done so. (Br. at 9, 20 (citing cases).) In *Goodyear*, for example, there were (as here) ongoing government investigations and a federal securities class action, and this Court expressly rejected the argument that demand was futile due to the "parallel class action litigation."

these arguments. *See, e.g.*, *Allstate Ins. Co. v. Glob. Med. Billing, Inc.*, 520 F. App'x 409, 410 (6th Cir. 2013) (affirming dismissal; "From Plaintiff's silence, the district court deemed that assertion undisputed, and it granted Defendants' motion to dismiss on the basis that Plaintiff lacked standing."); *Powell v. Wal-Mart Stores, Inc.*, 303 F. App'x 284, 285 (6th Cir. 2008) (affirming dismissal of claims as time-barred where plaintiff failed to address the statute of limitations argument in her opposition to motion to dismiss); *Engler v. Arnold*, 209 F. Supp. 3d 988, 991 (N.D. Ohio 2016) (granting motion for judgment on pleadings; plaintiff "abandoned" claim "by failing to respond to defendant's argument"), *aff'd*, 862 F.3d 571 (6th Cir. 2017).

The few remaining justifications that Plaintiff continues to press do not excuse her failure to make a demand, either.

### 1.     Allegations About Committee Service Do Not Excuse Demand.

Generalized allegations about membership on board committees and the roles of the committees do not excuse demand.  (Br. at 7 (citing *Monday v. Meyer*, 2011 WL 5974664, at *7 (N.D. Ohio Nov. 29, 2011); *Stanley*, 2012 WL 5269147, at *6; *Goodyear*, 2007 WL 43557, at *5).)  In response, Plaintiff simply repeats those insufficient allegations (Opp'n at 4-6, 9-11), and, citing *McCall v. Scott*, 239 F.3d 808 (6th Cir. 2001), tacks on a conclusory assertion of "actual or constructive knowledge" (Opp'n at 9), based on certain Directors' service on the Audit or Corporate Governance Committees.

Plaintiff's reliance on *McCall* (Opp'n at 6-7) is misplaced.  To start, because that case involved a Delaware corporation, 239 F.3d at 815, the court had no occasion to consider Ohio's stringent director liability statute.  Moreover, *McCall* underscores the insufficiency of the

---

2007 WL 43557, at *1 n.2, *6.  Likewise in *Ferro I*, there was, in addition, a company-led investigation.  2006 WL 2038659, at *2.  The Court still rejected the argument that demand was excused because the "Defendants were complicit in the wrongdoing and would not want to sue themselves."  *Id.* at *5.  And the Sixth Circuit affirmed. *Ferro II*, 511 F.3d at 619.

allegations here. There, the complaint alleged particularized facts demonstrating that the Columbia/HCA board knew or recklessly disregarded widespread, systematic, long-term health care fraud by Columbia's hospitals, home health agencies, and other facilities. *Id.* at 813. The plaintiffs alleged particularized facts, including "regular reports" to the entire board "about the company's acquisition program, including the structure of the various transactions and the anticipated performance of target companies." *Id.* at 821. In addition, the complaint alleged specific reports to the board's Audit Committee reflecting improper reimbursement practices, such as "discrepancies between cost reports submitted to the government and secret reserve reports; improper inclusion of money spent on physician recruitment, marketing, and advertisement with claims for patient care reimbursement; improper shifting of costs from inpatient to outpatient services to get higher reimbursement rates; and extra fees paid to referring physicians." *Id.* at 820. On the basis of those particularized facts and others, the court found that demand was excused. *See id.* at 826.[4]

Nothing similar is alleged here. The Complaint alleges no reports containing specific information indicating that the Company's contributions to Generation Now were improper or were being misappropriated or misapplied by others. (*See* Br. at 2-3, 11-13.) The Complaint does "not plead, with any specificity, which documents, which conversations, which employees, which meetings, or which reports" show that a majority of the Directors or those serving on the

---

[4] The *McCall* court concluded that the "magnitude and duration" of the alleged wrongdoing was "relevant" to its finding of a substantial likelihood of personal liability for at least half the board. 239 F.3d at 823, 824. Plaintiff here suggests that the size of the Company's contributions to Generation Now and the period over which they were made likewise support a finding of futility. (Opp'n at 13; *see also id.* at 11 (asserting that $60 million was "illegally expended" over three years); *id.* at 10 (same); *id.* at 7 (arguing that "sheer size" of contributions shows the Directors must have known).) But Plaintiff does not acknowledge that the Company's contributions were only a portion of the $60 million allegedly contributed by various "entities" over three years (Br. at 11-12 n.6), and further ignores that even the entire $60 million would have been a miniscule fraction (less than one quarter of 1%) of the Company's $33 billion of revenue over that period (*id.*). *See In re GoPro, Inc.*, 2020 WL 2036602, at *13 (Del. Ch. Apr. 28, 2020) (dismissing for failure to plead futility; rejecting allegation that the board must have known about "inventory levels for a product that would comprise only 10% of the Company's revenue").

Audit and Corporate Governance Committees were involved in the Company's contributions to Generation Now or knew that those contributions were being used by others in assertedly improper or illegal ways. (Br. at 11 (quoting *Ferro I*, 2006 WL 2038659, at *6).)

In that regard, this case is just like *Goodyear* and other cases where the complaint set forth "highly generalized" allegations that "provide no specific facts indicating a nexus between any individual [Director] and any inappropriate action or failure to act." *Goodyear*, 2007 WL 43557, at *5. Plaintiff asserts that her allegations are "more detailed" than the "merely general claims" in *Goodyear* (Opp'n at 13), but her assertion does not make it so. Rather, the Complaint's allegations, just as in *Goodyear*, "provide no specific facts indicating a nexus between any individual [Director] and any inappropriate action or failure to act." *Goodyear*, 2007 WL 43557, at *5.[5]

Instead of particularized facts showing that required nexus, Plaintiff simply observes that the Audit Committee met regularly. From that, she argues that the Audit Committee therefore must have "approved" the Company's contributions to Generation Now. (Opp'n at 10.)[6] But

---

[5] Just as here, the *Goodyear* complaint alleged which directors served on which committees, described each committee's role, and "allege[d] that[,] as a result of their position, each committee member knew that the supervisory and monitoring controls for the Company were inadequate but 'deliberately looked the other way' and allowed the Company to engage in wrongful and potentially criminal activities." *Compare* 2007 WL 43557, at *4, *with* ¶¶ 87-90, 15-25, *and* Opp'n at 9-13, *id.* at 11, 15 ("turned a blind eye"). The *Goodyear* allegations were insufficient, because the plaintiffs "fail[ed] to allege in any detail what each individual committee member did or did not do to supposedly breach his or her duties." 2007 WL 43557, at *4. So, too, here.

Plaintiff points to *Massey* (cited at Opp'n at 13), but *Massey* highlights the conclusory assertions here. The robust allegations there included facts showing that the board had failed to "respond to numerous red and yellow flags" that emphasized profits over safety, that the company had pled guilty to criminal charges, including one felony count for willful violation of mandatory safety standards resulting in death, eight counts for willful violation of mandatory safety standards, and one count for making a false statement, that the company "had suffered other serious judgments and settlements as a result of violations of law, had been caught trying to hide violations of law and suppress material evidence, and had miners suffer death and serious injuries at its facilities" and "continued to think it knew better than those charged with enforcing the law, and in fact, often argued with the law itself" instead of reforming its policies. *In re Massey Energy Co. Deriv. & Class Action Litig.*, 2011 WL 2176479, at *19-20 (Del. Ch. May 31, 2011). Nothing like that is alleged here.

[6] Citing the regularity of the Audit Committee's meetings, Plaintiff also asserts the Audit Committee "failed to detect" and so did not know about the "illegal scheme." (Opp'n at 10.) The parties thus agree that

even if the Complaint had pled facts showing that the Audit Committee "approved" the contributions (it does not), it alleges no facts showing that any Director on the Committee knew or believed that the contributions were improper in any way, far less that any of those Directors knew or believed that others were misappropriating or misusing the Generation Now funds. *See Ferro I*, 2006 WL 2038659, at *6 (complaint failed to plead futility where it had no "particular facts whatsoever to establish what roles, if any, the individual Defendants had in causing and/or covering up the [alleged reporting] irregularities"); *Monday*, 2011 WL 5974664, at *5 (not enough to simply "rel[y] on the structure of [FirstEnergy's] corporate governance").

Again citing *McCall* and again urging this Court to apply the wrong legal standard, Plaintiff argues that "each Director's prior experience" is a "significant factor" in the Court's assessment of the Directors' supposed knowledge that the Generation Now contributions were somehow improper or misused by others. (Opp'n at 9; *see also id.* at 13.) Plaintiff points to the "extensive leadership, monetary policy, financial services and regulatory experience" of the Directors who serve on the Audit Committee and the "extensive regulatory and industry experience" of the Directors who serve on the Corporate Governance Committee, and argues that this "prior experience" shows the Directors had "actual or constructive knowledge." (*Id.* at 9-11.) But Plaintiff's argument rests on her mischaracterization (and selective quotation) of *McCall*. There, the court considered the defendants' "prior experience" not in a general way (as Plaintiff suggests), but rather the specific experience of specific directors who had run health care companies acquired by Columbia that had been investigated for the same fraudulent billing,

_____

Plaintiff has not shown that the Audit Committee knew of any improper or illegal use of the Generation Now funds. (*See* Br. at 12-13.)

cost reporting, and marketing practices that were at issue in *McCall*. 239 F.3d at 819, 821.[7]  No

such specific experience is alleged here.

### 2. Conclusory Assertions That the Directors Are "Oppos[ed] To Transparency" Do Not Demonstrate Demand Futility.

Plaintiff's reliance in her opposition on several Directors having recommended against

the adoption of a shareholder proposal in 2017 underscores the absence of specific facts to show

that a majority of the Directors cannot consider a demand.  (Opp'n at 13-14.)  The board's

recommendation was based on its determination that the proposal was "duplicative and onerous,"

would "divert importance resources" from other efforts the board believed to be in the

Company's best interests, and was unnecessary because the board believed the existing policies

"promote transparency and compliance with the law."  (Br. at 8.)  Plaintiff identifies no

particularized facts calling into question the *bona fides* of the board's recommendation or

demonstrating that the board harbored some animosity to "transparency."  Nor does Plaintiff

acknowledge that, even though the 2017 and similar proposals did not garner the support of a

majority of the Company's shareholders, the board nevertheless took action to enhance the

Company's policies in 2018 and again in 2019.  (Br. at 8 n.4.)  As Defendants pointed out, the

mere existence of a disagreement between a shareholder and a company's board does not even

begin to show "bad faith" by directors.  (Br. at 9 (citing *Robinson Family Trust v. Greig*, 2013

WL 1943330, at *6 (N.D. Ohio May 10, 2013).)  Plaintiff's response—that "[t]his is not a case

---

[7] Furthermore, "Directors with special expertise are not held to a higher standard of care in the oversight context simply because of their status as an expert." *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 128 (Del. Ch. 2009).  Defendants are unaware of any case applying Ohio law that hold directors with specific expertise to a higher standard of care.  Such an elevated, director-specific standard of care would be inconsistent with Section 1701.59, which sets the same standard for all directors, regardless of any "prior experience."  (*See also* Doc. #50-5 (Audit Committee Charter) ("Nothing in this Charter is intended to expand applicable standards of liability under the statutory or regulatory requirements for the Directors of the Company or members of the Committee.").)

that … Plaintiff is unhappy with the Board's compensation decisions"—is no response at all. (Opp'n at 15 (citing *Robinson*).)

### 3. Naming All The Directors As Defendants Does Not Excuse Demand.

To the extent Plaintiff still asserts that demand is excused as futile because the directors, who are all named as defendants, do not want to sue themselves (*see* Opp'n at iv, 8, 17; ¶ 100), she does not confront the wall of authority in this Circuit rejecting that "excuse" (*see* Br. at 9). That leaves only Plaintiff's argument that a majority of the Directors face a substantial likelihood of personal liability, and those arguments likewise fail.

Plaintiff does not dispute that claims against directors of Ohio corporations are governed by a specific statute that sets a stringent standard for director liability (intent to injure the company or reckless disregard for its interests) and requires an elevated standard of proof (clear and convincing evidence). R.C. § 1701.59(E). She contends that a majority of the Directors have "acted 'with reckless disregard for the best interests of the corporation,'" (Opp'n at 1), but that assertion "merely repeats the statutory language in the negative; it is wholly unsupported by facts that might lead to such a conclusion," *Goodyear*, 2007 WL 43557, at *9.

Rather than responding to Defendants' cases—cases applying the Ohio director-liability standard in derivative actions involving Ohio corporations—Plaintiff primarily relies on *McCall*, which involved a Delaware corporation and thus not did not implicate Section 1701.59(E). (*See* Opp'n at 7, 8, 9, 12, 16.) *McCall*, as demonstrated above (*supra* at 4-5, 7-8), is factually inapposite and, moreover, does not address the key question here: whether the Complaint sets forth particularized facts demonstrating that at least six of the eleven Directors are substantially

likely to be found by clear and convincing evidence to have deliberately harmed FirstEnergy or to have recklessly disregarded its interests.[8]

### (a) No Substantial Likelihood Of Liability For Breach Of Fiduciary Duty

Plaintiff makes clear that her demand-futility argument rests on the Directors' supposed approval, in breach of their fiduciary duties, of an "illegal payment scheme." (Opp'n at 8.)[9] But the Complaint alleges no specific facts about the circumstances of any such "approval" of such contributions believed to be improper—who approved the contributions (the board, the Audit Committee, the Corporate Governance Committee?), when any such "approval" occurred, whether the board or a committee separately approved each contribution over the course of three years, what the board or a committee ever was told about the contributions, or what the board or a committee ever knew or believed about the contributions. *See Monday*, 2011 WL 5974664, at *5 ("Plaintiffs do not point to any meeting, report, conversation, or process used by the Board to make the challenged decisions.").

Instead, Plaintiff observes that the Audit and Corporate Governance Committees met regularly (Opp'n at 10-11), but the Complaint supplies no information about any of those meetings or what the Directors on those committees did, or were told, or knew, or believed at any time (*see supra* at 4-7). In short, "[t]he Complaint does not include a single specific fact

---

[8] Plaintiff argues that the Court should apply the demand-futility test applicable where a board's affirmative business decision (such as approving a merger) is challenged as a "valid exercise of [] business judgment" (*e.g.*, Opp'n at 8). But the Complaint pleads no specific facts showing that the board made any affirmative decision regarding the contributions to Generation Now, far less that any decision was made knowing that Householder or others were allegedly misappropriating those funds.

[9] *See also* Opp'n at 7 (asserting that the contributions to Generation Now was the result of "a conscious decision of the Board"); *id.* ("[a]pproval of the [p]ayments to Generation Now" ); *id.* (arguing that the Directors must have known and "approv[ed]" the contributions due to their "sheer size"); *id.* at 9 ("each [Director] expressly approved … the wrongs complained of"); *id.* at 10 (the Audit Committee "approved the massive cash disbursements in furtherance of the illegal scheme"); *id.* at 11 (the Audit and Corporate Governance Committee "approved" the contributions); *id.* at 13 ("the present action seeks to address FE's Board approval of a $60 million illegal bribery scheme"); *id.* at 18 (approval by Directors of "illegal" contributions is not "a valid exercise of business judgment").

showing how any [Director] was complicit in the alleged wrongdoing."  *Goodyear*, 2007 WL 43557, at *4.  (*See also* Br. at 11.)

Even if the Complaint alleged with specificity that the board (or a committee, and which one) "approved" a specific contribution, that would not be enough to excuse demand.  That would establish, at most, that the board (or a committee) approved activity protected by the Company's First Amendment rights.  (*See* Br. at 12; *see also id.* at 2.)  Much more would be needed:  specific facts showing that the Directors knew that the contributions would be used in an illegal or improper manner, and Plaintiff does not argue that the Complaint sets forth any such facts.

Without such facts—particularized factual allegations that the board or a committee believed that the Company's contributions to Generation Now were in any way improper, or knew that others allegedly were misappropriating funds from Generation Now or using them for improper purposes—the Complaint boils down to "must have known" allegations that courts "routinely reject" as "conclusory."  (*See* Br. at 13 (citing *Stanley*); *id.* at 13 n.8 (collecting sampling of cases).)[10]

### (b)  No Substantial Likelihood Of Liability Relating To Monitoring Controls

Plaintiff's assertions that the Directors "failed to enact sufficient controls to detect the illegal scheme, or turned a blind eye to the conduct" (Opp'n at 11) do not excuse demand.  The

---

[10] The cases Plaintiff cites do her no good.  (Opp'n at 15.)  *South v. Baker* undermines her position.  62 A.3d 1, 16-19 (Del. Ch. 2012) (plaintiffs failed to plead demand futility where the complaint did not identify "any statute, regulation, or other provision of positive law that the Board allegedly decided consciously to violate," "nowhere allege[d] anything that the directors were told about" safety incidents that allegedly constituted red flags, and conceded the company had a functioning safety committee).  *Shaev v. Baker* likewise undercuts Plaintiff's argument, because the complaint there alleged that the company's CEO "admitted that the Board and several committees within the Board learned of an uptick in sales integrity issues" through an existing reporting system, but "knowingly failed to stop further problems from occurring."  2017 WL 1735573, at *15 (N.D. Cal. May 4, 2017).

Complaint admits that the Company had controls in place for its lobbying and related activities (¶ 103); an argument that the Directors should have caused the Company to implement different controls merely sounds in negligence and cannot excuse demand. That is because Ohio law "frees the director from monetary liability for negligence in any degree." R.C. § 1701.59 (1986 Committee Comment) (Section 1701.59(D) (now (E)). *See also Goodyear*, 2007 WL 43557, at *8 ("Ohio law makes clear that the defendants in the case at bar cannot be liable in damages for [] non-intentional breaches").

The assertion that the board "turned a blind eye to the conduct" fares no better, because the Complaint lacks a single particularized factual allegation that six or more Directors ever were alerted to improprieties with the Generation Now contributions and yet "turned a blind eye" to them. (*See* Opp'n at 11 (citing no allegations in the Complaint); *id.* at 15 (same).) The Complaint offers only conclusions, not particularized facts, and this Court has found nearly identical allegations do not plead demand futility. *See Goodyear*, 2007 WL 43557, at *4 (rejecting conclusory allegations that the directors "knew that the supervisory and monitoring controls for the Company were inadequate but 'deliberately looked the other way' and allowed the Company to engage in wrongful and potentially criminal activities").[11]

---

[11] Plaintiff cites *Fradkin v. Ernst*, but her reliance on that post-trial opinion misses the mark. There, the plaintiff presented trial testimony in support of his demand-futility allegation "and no conflicting testimony was offered by defendants." 571 F. Supp. 829, 839 n.20 (N.D. Ohio 1983) (cited at Opp'n at 12). On that basis alone, the court concluded that demand was futile. *Id.* Her reliance on *In re FirstEnergy Corp. S'holder Deriv. Litig.*, is likewise inapt. The complaint there, unlike here, "set[] forth detailed allegations" that "[d]espite the many warning signs of problems," the directors ignored issues regarding safety at one of the plants, "ignored warning signs that the Company's power lines were inadequately maintained, disregarded industry practices, and failed to take proper steps to prevent future power outages," and failed to exercise oversight over accounting such that the Company was forced "to restate its financial statements." 320 F. Supp. 2d 621, 624-25 (N.D. Ohio 2004) (cited at Opp'n at 12). The 2004 *FirstEnergy* case also pre-dates the Sixth Circuit's *Ferro II* decision and, to the extent it conflicts with that decision, is not good law.

**No Substantial Likelihood Of Liability For Alleged Violations Of Section 14(a)**

As to the Section 14(a) claim, Plaintiff's opposition again highlights the dearth of particularized facts showing that a majority of the Directors were involved in the Company's contributions to Generation Now or knew of any misuse of those funds. Plaintiff argues that the 2018-2020 proxy statements were false and misleading because they "failed to disclose" the Company's supposed "participation in the illegal scheme," of which the "Board either knew of and participated in or turned a blind eye to," and thus give rise to a substantial likelihood of liability. (Opp'n at 15; *see also id.* at 17.)[12] But, as discussed above, there are no particularized facts showing that the board "knew" of any illegal scheme and either "participated in" or ignored it. Plaintiff does not acknowledge that courts in this Circuit have made clear that generalized allegations that Directors did "director-type" things are not enough. (Br. at 16-17 (citing *Ferro I*, 2006 WL 2038659, at *6; *Monday*, 2011 WL 5974664, at *6).)[13]

As Defendants pointed out, the Section 14(a) claim does not present a substantial likelihood of liability for other reasons, too. The Complaint fails to plead causation in two separate ways (Br. at 17-18), and does not even attempt to plead scienter as to the outside Directors (*id.* at 18 n.11). In the face of those arguments, Plaintiff says nothing, thus waiving

---

[12] Plaintiff appears to abandon her claim as to the 2017 proxy statement (*compare* Opp'n at 14 ("2018, 19 and 20 Proxies"), *with id.* at 17 ("2017-2020 Proxies")), which makes sense because that claim is time-barred and so gives rise to no possibility of liability (*see* Br. at 17). Plaintiff also does not challenge that the alleged misappropriation of Generation Now funds by Householder or others does not render any statement by the Company as to its own policies false or misleading. (Br. at 15-16.)

[13] Once again, Plaintiff's cited case demonstrates the poverty of the Complaint's allegations. Plaintiff relies on *In re Gas Natural, Inc.*, 2015 WL 3557207 (N.D. Ohio June 4, 2015) (cited at Opp'n at 15), but that case does not help her because, unlike here, the plaintiff there did not "merely assert[] that the Outside Director Defendants are liable for fiduciary duty breaches as a result of their membership on Gas Natural's Board." *Id.* at *19. Instead, "the detailed allegations in the Complaint find support in thousands of pages of documentary evidence submitted in connection with the PUCO proceedings; PUCO analyses, reports, and orders; U.S. Securities and Exchange Commission filings; and statements from confidential witnesses." *Id.* Moreover, the court found that demand was excused due to particularized allegations of domination and control of a majority of the board by one director. *Id.* at *9-11. There are no similar allegations here.

any argument that demand is excused based on the Section 14(a) claim. *See, e.g.*, *Allstate Ins.*, 520 F. App'x at 412 (affirming dismissal; plaintiff "never attempted to respond to or refute Defendants' standing arguments" in its motion to dismiss and that "failure to respond to Defendants' attack on its standing … amounts to a waiver of the argument").

### C.    Recent Developments Do Not Show Demand Futility.

In a last-ditch bid to avoid dismissal, Plaintiff repeatedly and improperly refers to matters outside in the Complaint in an attempt to "bolster" its insufficient allegations.  (Opp'n at 18-20, *id.* at 5 n.10, *id.* at 8. n.11, *id.* at 10 nn.14 & 16, *id.* at 11 n.17; Doc. #50-4.)  "Because a motion to dismiss tests the sufficiency of the pleadings, courts do not consider 'after-the-fact allegations' raised in briefs to determine the sufficiency of a pleading." *Gen. Elec. Co. v. S & S Sales Co.*, 2012 WL 2921566, at *4 (N.D. Ohio Jul. 17, 2012).  *See also Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) (declining to consider new allegations in opposition to motion to dismiss; plaintiffs cannot "amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint"); *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 405 (6th Cir. 2012) (same).  Even if the Court could consider such information on this motion,[14] it does not change the conclusion that Plaintiff has failed plead to demand futility.

Plaintiff contends that demand is excused by unproven counterclaims asserted against FirstEnergy by a former employee of a consulting firm that assisted FirstEnergy with internal

---

[14] To the extent Plaintiff seeks to have this Court take judicial notice of allegations in a counterclaim in pending litigation as a "matter of public record" (Opp'n at 3 n.5), this Court should decline.  "While a court may take judicial notice of the existence of court documents and the proceedings in which those documents were generated, federal courts do not generally take judicial notice of the truth of any statement of fact contained within those documents." *Derrico v. Moore*, 2019 WL 1876960, at *12 (N.D. Ohio Apr. 25, 2019).  This rule applies with particular force where, as here, "the significance of the records sought to be judicially noticed is subject to dispute." *Jergens v. Ohio Dep't of Rehab. & Corrs. Adult Parole Auth.*, 492 F. App'x 567, 569 (6th Cir. 2012).

audits.[15]  In those counterclaims, the former contractor asserts that he reviewed materials relating to an unspecified 2019 internal audit and that the audit "may" have violated "one or more federal statutes."  (*See* Doc. #50-4, ¶¶ 4, 11.)  Those purported violations relate to the "scope" of the audit "in light of the contractual relationships" between FirstEnergy and its former subsidiary, but are not described with any specificity.  (*Id.*, ¶ 12.)  The counterclaims do not assert that the counterclaim-plaintiff had any involvement in any audit involving the Company's contributions to Generation Now or how others used Generation Now funds, or saw any documents relating to the Company's contributions to Generation Now, or communicated with anyone (including any of the Directors) about any Generation Now contributions or the use of Generation Now funds.

Even if it were procedurally proper to consider the outside-the-Complaint assertions of a litigation opponent of the Company in another matter (it is not), these assertions would not remotely provide the particularized facts needed to show, on a director-by-director basis, that at least half the members of the FirstEnergy board ever acted with intent to harm the Company or with reckless disregard for its interests

Plaintiff also points to developments in late October, when an independent committee of the board determined to take employment actions relating to the Company's now-former CEO and two officers.  (Opp'n at 20.)[16]  Those actions were the result of an investigation conducted by the same directors whom Plaintiff contends cannot consider a demand.  The fact that the committee conducted an investigation, concluded that the Company should take employment actions, and is considering whether to pursue recoupment of compensation (Doc. #50-7) should

---

[15] The counterclaim-plaintiff in that matter worked for a consulting firm called Clearsulting for about four months, from March 2020 to July 2020.  (Doc. #50-4, ¶ 4.)  Clearsulting and FirstEnergy filed suit against him in September 2020 for theft of trade secrets, breach of contract, and other violations.  (*See id.*, ¶ 24.)

[16] Plaintiff incorrectly asserts that Defendants Reffner and Yeboah-Amankwah were terminated as of November 8, 2020.  The Form 8-K attached as Exhibit 6 (Doc. #50-8) to the opposition states they were "separated" from the Company.

leave no doubt that the independent Directors are capable of exercising their business judgment to determine where the Company's best interests lie.  Nor do these recent developments plug any of the yawning gaps in this Complaint—most especially, the lack of particularized facts demonstrating that a majority of the Directors ever did something with an intent to hurt the Company or with reckless disregard for its interests.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that the Court dismiss the Complaint because Plaintiff lacks standing, due to her unexcused failure to submit a pre-suit demand to FirstEnergy's board.

Dated: November 27, 2020

Respectfully submitted,

/s/ Geoffrey J. Ritts
Geoffrey J. Ritts (0062603)
Robert S. Faxon (0059678)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Email: gjritts@jonesday.com
Email: rfaxon@jonesday.com

Marjorie P. Duffy (0083452)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215
Telephone: (614) 469-3939
Facsimile: (614) 461-4198
Email: mpduffy@jonesday.com

*Attorneys for Defendants Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil, III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Leslie M. Turner, Steven E. Strah, Robert Reffner, and Ebony Yeboah-Amankwah and Nominal Defendant FirstEnergy Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on November 27, 2020.  Notice

of this filing will be sent to all electronically registered parties by operation of the Court's

electronic filing system.  Parties may access this filing through the Court's system.

/s/ Marjorie P. Duffy
_____
Marjorie P. Duffy (0083452)

*One of the Attorneys for Defendants Michael
J. Anderson, Steven J. Demetriou, Julia L.
Johnson, Donald T. Misheff, Thomas N.
Mitchell, James F. O'Neil, III, Christopher D.
Pappas, Sandra Pianalto, Luis A. Reyes,
Leslie M. Turner, Steven E. Strah, Robert
Reffner, and Ebony Yeboah-Amankwah and
Nominal Defendant FirstEnergy Corp.*