**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JENNIFER L. MILLER, *et. al.*, | ) No. 5:20-cv-1743-JRA |
| | ) |
| *Plaintiffs*, | ) Judge John R. Adams |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ANDERSON*, et. al.*, | ) |
| | ) |
| *Defendants*, | ) |
| | ) |
| and | ) |
| | ) |
| FIRSTENERGY CORP., | ) |
| | ) |
| *Nominal Defendant.* | ) |
| | ) |
| | ) |
| | ) |

**RESPONSE OF THE SPECIAL LITIGATION COMMITTEE OF THE BOARD OF
DIRECTORS OF NOMINAL DEFENDANT FIRSTENERGY CORP.
TO THE COURT'S ORDER OF MARCH 11, 2022**

The Special Litigation Committee ("SLC") of the Board of Directors of FirstEnergy Corp. ("FirstEnergy" or the "Company"), by and through their undersigned counsel, submit this response to the Court's March 11, 2022 Order, Dkt. #286, to raise certain issues to the Court's attention regarding the Court's request for public disclosure of information regarding the proposed settlement.

First, the Court has expressed the view that there is a strong public interest in disclosure because the derivative claims asserted on the Company's behalf stem from a bribery scheme involving public officials, repeatedly describing this action as a "public corruption case."  Mar. 9, 2022 Tr., Dkt. #280 at 33:25–34:1, 37:21–22.  However, the United States Department of Justice ("DOJ") is currently investigating and prosecuting the criminal public corruption case regarding these issues.  *See United States v. Larry Householder, et al.*, Case No. 1:20-mj-00525-SKB (S.D. Ohio).  That investigation has already resulted in several indictments and guilty pleas, as well as a public trial scheduled for January 2023.  To the extent the DOJ determines that additional criminal prosecutions are supported, it will undoubtedly pursue such cases.[1]

The Company has a significant interest in the resolution of these underlying bribery allegations, as evidenced by its decision to enter into the Deferred Prosecution Agreement ("DPA") with the DOJ.  However, although these derivative claims arise from the same subject matter, the aim of this lawsuit is not to satisfy the public interest in the vigorous prosecution of the underlying bribery allegations; that task is in the capable hands of government authorities.  Rather, these derivative actions assert claims on the Company's behalf and for the Company's benefit for breach of fiduciary duty against certain current and former directors and officers of the Company, to recover for potential harm done to the Company as a result of the underlying allegations.  The only relevant stakeholders in these derivative actions, consequently, are FirstEnergy itself and, by extension, its stockholders.  The Court's desire for public

---

[1] Moreover, other regulators are currently investigating or have previously investigated aspects of the underlying bribery scheme, including the Securities and Exchange Commission and Federal Energy Regulatory Commission, and other state regulators. FirstEnergy, Corp. Form 10-K (Feb. 16, 2022), at 63–64.  In addition, several private litigations have been brought against the Company related to the same issues, including a securities class action and claims under the federal civil Racketeer Influenced and Corrupt Organizations Act.  *Id.*

accountability, while understandable, risks harm to the interests of FirstEnergy and its stockholders, which is exactly the opposite of what a derivative litigation is supposed to do.

These potential harms are not hypothetical.  By mandating that Plaintiffs publicly disclose their purported "factual findings," this Court would open a Pandora's Box, as Individual Defendants would likely feel compelled to counter with their factual and legal defenses and the proceeding would devolve into a kind of public mini-trial, exactly what a settlement is designed to avoid.  Moreover, because the Company is obligated under Ohio law to indemnify former officers and directors, this harmful public proceeding—which would necessarily rely on confidential discovery produced by the Company subject to a protective order—would be entirely on the Company's dime.  Such a proceeding would also risk interfering with the robust cooperation requirements and disclosure rules imposed on the Company by the DPA, as the DPA limits the Company's ability to make statements regarding the issues discussed in the DPA's Statement of Facts.  *See United States v. FirstEnergy, Corp.*, Case No. 1:21-cr-00086-TSB, at Dkt. #3 (S.D. Ohio July 22, 2021).  The Company is fully and actively cooperating with ongoing government investigations as the DPA requires; this cooperation should allay any concerns about FirstEnergy's commitment to ensuring there is public accountability in connection with the underlying public corruption case.

Second, refusing to grant the parties a stay of this action unless the Court receives answers to factual questions underlying the proposed settlement contravenes both the mediation privilege and the strong federal policy in favor of the settlement of complex cases.  *See, e.g.*, *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) (affirming approval of derivative action settlement, noting that "[s]ettlements are welcome in cases such as this because litigation is 'notoriously difficult and unpredictable'" and "[a]bsent evidence of fraud or

collusion, such settlements are not to be trifled with.") (citation omitted). Part of the bargained-for benefit of this settlement is avoiding the disclosures, publicity, and distraction that come with continued litigation. To require the factual positions of the parties reached in connection with negotiations in a confidential mediation be disclosed in open court would undermine the value of the settlement to the Company and be entirely contrary to the federal mediation privilege, which aims to encourage parties to negotiate the resolution of disputes on a confidential basis. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980–81 (6th Cir. 2003).

The SLC, along with the other parties, determined that the benefits of settlement outweighed the risks of further litigation. This weighing of risks and benefits included the desire to avoid the expense, distractions and unpredictability that depositions and further proceedings would bring, including with regard to other ongoing litigations based on the same allegations where the Company is a defendant. Nothing in federal or state law requires that depositions or any particular amount of discovery take place prior to the settlement of a derivative action. As Plaintiffs point out, several recent historically large derivative settlements have taken place at this stage or even earlier. *See Empl. Ret. Sys. of the City of St. Louis v. Jones*, Case No. 2:20-cv-04813-ALM, Pls.' Mot. for Preliminary Approval, Dkt. #170, at 15–20 (S.D. Ohio March 11, 2022).

<u>Finally</u>, as noted above, the SLC's four members—who are all indisputably independent directors who joined the board after the events giving rise to these derivative claims—actively participated in the mediation and subsequent discussions to ensure that any negotiated settlement would serve the Company's best interests. Consistent with its mandate, which empowered the SLC to "take all actions as the Special Litigation Committee deems advisable, appropriate, and

in the best interests of the Company and its shareholders with respect to the Actions and the

Demands, including, without limitation, prosecution, control, and supervision of the Actions and

the Demands for the Company," June 29, 2021 FirstEnergy Board Resolutions, reproduced at

Dkt. #96-2, the SLC evaluated the terms of the proposed settlement and agreed that the

settlement provided substantial benefits to FirstEnergy and would serve the Company's best

interests.

Indeed, as Plaintiffs have noted, the proposed settlement would likely be the largest in the

history of derivative actions in Ohio, and one of the largest to date anywhere in the country.

Under these circumstances, the judgment of the SLC and a highly-regarded group of Plaintiffs'

counsel that the settlement serves the Company's best interests is entitled to deference.

Dated: March 16, 2022

OF COUNSEL:

Kerin Lyn Kaminski, Esq. (0013522)
Kathleen A. Nitshke, Esq. (0073397)
GIFFEN & KAMINSKI, LLC
1300 E. 9th St. #1600
Cleveland, OH 44114
(216) 621-5161 (phone)
kkaminski@thinkgk.com
knitschke@thinkgk.com

*Attorneys for the Special Litigation
Committee of the Board of Directors of
Nominal Defendant FirstEnergy Corp.*

Respectfully Submitted

*/s/ Susan Gittes*
Maeve O'Connor
John Gleeson
Susan Gittes
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000 (phone)
(212) 909-6836 (fax)
mloconnor@debevoise.com
jgleeson@debevoise.com
srgittes@debevoise.com
*Admitted Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 16, 2022, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing, which will notify all counsel of record.


*/s/ Susan Gittes* _____
Susan Gittes, *Admitted Pro Hac Vice*

*Attorney for the Special Litigation Committee of the Board of Directors of Nominal Defendant FirstEnergy Corp.*