

**MARKOVITS
STOCK
DeMARCO**

W. B. Markovits
Attorney

July 25, 2022

*By Hand Delivery & Federal Express*

The Honorable John R. Adams
2 South Main Street, Suite 510
Akron, OH 44308

    Re:   *Miller v. Anderson et al.*, No. 5:20-cv-01743 (N.D. Ohio)

Your Honor:

    I write on behalf of Markovits, Stock & DeMarco, LLC ("MSD") and Abraham, Fruchter & Twersky LLP ("AFT"), counsel for Todd Augenbaum, a shareholder of FirstEnergy Corp. ("FirstEnergy" or the "Company"), in response to the Court's July 13, 2022 Order inviting any counsel interested in appointment to represent the interests of FirstEnergy in this derivative suit to notify the Court via a written submission. ECF No. 332.

### AFT & MSD's Representation of FirstEnergy Shareholders in Related Matters to Date

    AFT and MSD initially represented FirstEnergy shareholder Leslie Katz in making a litigation demand on FirstEnergy's Board of Directors to investigate and take action on behalf of FirstEnergy against Clearsulting LLC ("Clearsulting") and PriceWaterhouseCoopers LLP ("PwC") in connection with the Company's bribery scandal. Mr. Augenbaum later joined that litigation demand.

    AFT and MSD, in their capacity as counsel to Mr. Augenbaum, are the only law firms who have appeared in the Southern District of Ohio to timely object to the proposed settlement. A copy of that objection (the "Augenbaum Objection") is enclosed herewith. MSD and AFT believe that the Augenbaum Objection is important because it seeks to prevent the U.S. District Court for the Southern District of Ohio from entering an order potentially impairing the ability of the Company or any FirstEnergy shareholder to continue to litigate the claims pending before this Court. Accordingly, if the Augenbaum Objection is overruled by the Southern District of Ohio, Mr. Augenbaum, as the only shareholder known to have timely objected, will have unquestioned standing to challenge any approval of the proposed settlement.

    Our firms, if appointed by Your Honor, will vigorously prosecute this action including the Compensation Claims (as defined in the Augenbaum Objection at p.10), for which demand has already been found futile and which are not subject to being released in the proposed settlement being presented to the Southern District of Ohio. *See* Augenbaum Objection at pp.10-12. The same is true of claims against Clearsulting and PwC with respect to which Mr. Augenbaum believes that

July 25, 2022
Page 2 of 4

the SLC has constructively refused his demand by failing to act and, instead, agreeing to language in the proposed settlement which could be read to release those claims (*see* Augenbaum Objection at pp.4-6) as well as many other claims remaining in the action, including unknown claims. *See* Augenbaum Objection at pp.12-13.

### *AFT & MSD are Qualified to Serve as Lead Shareholder Derivative Counsel*

AFT and MSD's combined experience and resources make us particularly suitable to serve as lead shareholder derivative counsel in this matter. AFT is a New York based law firm with substantial experience prosecuting shareholder derivative and federal securities actions.[1] AFT has achieved material results in derivative actions involving the reckless management of a company's operations causing damage to the company. In one such case, as co-lead counsel, AFT recovered $25 million on behalf of a mutual fund after successfully litigating a demand for books and records through summary judgment. *See In re Third Avenue Trust Shareholder & Derivative Litig.*, Consolidated C.A. No. 12184-VCL (Del. Ch.). In another action, AFT played a leading role in prosecuting claims brought derivatively on behalf of the Bank of New York Corporation with respect to the damage caused to the company by corporate insiders' failure to properly institute the internal controls necessary to prevent money laundering. After the denial of a motion to dismiss, taking substantial pre-trial discovery and defeating an effort to have the case decided by a special committee, the case was resolved for a cash payment of $26.5 million for the benefit of the Bank of New York.

AFT has also served as lead counsel in several derivative actions challenging the wrongful refusal of a stockholder's demand which is potentially relevant here given Augenbaum having made a demand on the Board. *Fagin v. Scolnick*, No. ATL-L-3406-07-MT (N.J. Super. Ct.), is an example of a case in which AFT served as lead counsel in a shareholder derivative action following the failure of the Merck & Co. board of directors' failure to sue in response to a litigation demand relating to corporate insiders' misconduct surrounding Merck's pain reliever Vioxx. In that action, AFT successfully brought about material corporate governance reform, which the presiding judge described as "far reaching and act[ing] to position Merck at the forefront of sound corporate governance and risk management practices," "ensur[ing] scientific integrity and drug patient safety," and "provid[ing] substantial benefit to Merck and its shareholders because they may serve to prevent future liability from the sale of potentially dangerous drugs." The corporate governance changes, which provided, *inter alia*, for a Chief Medical Officer to act as an advocate for patient safety, were similarly praised by industry analysts as something "every pharma company should have[.]" Similarly, in a shareholder derivative action brought on behalf of

---

[1]     Since this case may implicate federal securities laws, we note AFT's expertise in prosecuting such claims. In *Pyramid Holdings, Inc. v. Terraform Global, Inc. et al.*, No. 16-cv-07981-PKC (S.D.N.Y.), AFT, as sole lead counsel for the class, secured a $48.75 million settlement, approved in 2019, representing more than 50% of likely recoverable damages based upon rulings in a related multi-district litigation. Recently, AFT defeated a motion to dismiss claims under federal securities laws in another class action brought arising under the federal securities laws. *See In re CBL & Assocs. Props, Inc. Sec. Litig.*, No. 119CV00181JRGCHS, 2022 WL 1405415 (E.D. Tenn. May 3, 2022), *opinion clarified*, 2022 WL 1714484 (E.D. Tenn. May 25, 2022).

July 25, 2022
Page 3 of 4

Johnson & Johnson AFT served as court-appointed lead demand refused counsel and was responsible for obtaining corporate governance changes found to confer a substantial benefit on the company. *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 496 (D.N.J. 2012). In addition, AFT served as a lead counsel in a shareholder derivative action brought on behalf of Google Inc. after successfully defeating a motion to dismiss based upon a demand review committee's refusal to bring the action. *See City of Orlando Police Pension Fund v. Page*, 970 F. Supp. 2d 1022 (N.D. Cal. 2013). The action was eventually settled for substantial governance reforms including Google being required to provide at least $50 million per year principally collectively on its product quality operations, policy enforcement, and User Safety Initiative.

AFT is currently prosecuting several other derivative actions. These include an action brought on behalf of Xerox to disgorge profits that Carl Icahn and his affiliates made by allegedly frontrunning Xerox's attempted acquisition of HP, Inc., where AFT successfully appealed a dismissal on the pleadings, demonstrating that demand was futile and that a factual finding that the Company did not suffer damages because of an alleged breach of fiduciary duties was erroneous and, in any event, did not support dismissal. *See Miami Firefighters' Relief & Pension Fund v. Icahn*, 158 N.Y.S.3d 44, 199 A.D.3d 524 (N.Y. App. Div., 1st Dep't 2021). AFT is also prosecuting several cases as lead or co-lead counsel seeking to disgorge profits from insider sales that were allegedly motivated by material nonpublic information, including *In re Rocket Co. Inc Stockholder Derivative Litigation*, No. 2021-1021 (Del. Ch.), *Silverberg ex rel. Funko, Inc. v. Mariotti*, No. 2021-0517 (Del. Ch.), and *In re Kraft Heinz Company Derivative Litigation*, No. 2019-0587 (Del. Ch.) (appeal pending).

MSD is a law firm based in Cincinnati, Ohio that has substantial experience serving as lead counsel in complex cases. MSD was appointed by the Ohio Attorney General to serve as a lead counsel in *In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation*, No. 1:04-cv-1639 (D.D.C.), a 10b-5 securities class action that settled for $153 million in 2014. MSD is currently a lead counsel through appointment by the Attorney General in *Ohio Employees Retirement System v. Federal Home Loan Mortgage, aka Freddie Mac*, No. 4:08-cv-00160 (N.D. Ohio), a securities class action that MSD has diligently prosecuted for more than a decade, including a successful Sixth Circuit Appeal. Furthermore, MSD served as lead counsel in *Williams v. Duke Energy International*, No. 1:08-cv-0046 (S.D. Ohio), resulting in an $80.875 million settlement before Judge Edmund A. Sargus, Jr., including antitrust and civil RICO claims stemming from alleged bribery payments to select large energy consumers.

Notably, MSD was recently selected to step in as replacement lead counsel in the settlement of an ERISA class action, *Shy v. Navistar International Corp.*, No. 92-cv-0333-WHR (S.D. Ohio), which was resolved with a settlement valued at over $742 million. Similar to what is being requested of replacement lead shareholder derivative counsel in this case, MSD assumed the lead counsel role for plaintiffs in *Shy* – a case that had been pending since 1992 – and seamlessly guided the historic settlement to conclusion with Judge Walter H. Rice granting final approval on June 13, 2022. Highlighting MSD's experience handling complex representative actions, one Ohio federal court recently noted with respect to MSD: "plaintiffs' attorneys have appeared in this Court many times and have substantial experience litigating class actions and other complex matters." *Bechtel v. Fitness Equip. Servs., LLC*, No. 1:19-CV-726, 2021 WL 4147766, at *11 (S.D. Ohio Sept. 12, 2021). Accordingly, MSD is qualified to serve as lead shareholder derivative counsel

July 25, 2022
Page 4 of 4

here and looks forward to the opportunity, if presented, to serve the plaintiffs and FirstEnergy and appear before this Court.

We appreciate the Court's consideration of our application to serve as co-lead counsel in this Action and remain ready to answer any additional inquiries the Court may have.

Very truly yours,

**MARKOVITS, STOCK & DeMARCO, LLC**
W.B. Markovits (bmarkovits@msdlegal.com)

**ABRAHAM, FRUCHTER & TWERSKY, LLP**
Jeffrey S. Abraham (jabraham@aftlaw.com)

Enclosures

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| EMPLOYEES RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS, et al., | Case No. 2:20-cv-04813 |
| Plaintiffs, | Chief Judge Algenon L. Marbley |
| v. | Magistrate Judge Kimberly A. Jolson |
| CHARLES E. JONES, et al., | |
| Defendants, | |
| and | |
| FIRSTENERGY CORP., | |
| Nominal Defendant. | |

## TODD AUGENBAUM'S OBJECTION TO THE PROPOSED SETTLEMENT

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

SUMMARY OF ADDITIONAL RELEVANT FACTS ............................................. 2

ARGUMENT ......................................................................................................... 3

    I.    PLAINTIFFS FAIL TO DEMONSTRATE THAT THE POTENTIAL RELEASE OF CLAIMS PROVIDED FOR CLEARSULTING AND OTHER ADVISORS IS FAIR AND REASONABLE ......................................... 4

    II.    PLAINTIFFS FAIL TO DEMONSTRATE THAT THE SETTLEMENT OF CLAIMS AGAINST THE DIRECTORS AND OFFICERS IS REASONABLE ................................................................................... 7

        A.    Plaintiffs Fail to Explain How Much Money Resolving the Direct Claims Is Likely to Cost FirstEnergy or What Other Insurance Coverage Is Available to the Company ..................................... 7

        B.    Plaintiffs Fail to Establish that the $180 Million in Insurance Proceeds Would Otherwise Be Unavailable to Pay for the Direct Claims ............................................................................................... 8

        C.    Plaintiffs Fail to Account for the Negative Impact of the Broad Release on Existing Litigation and Claims Involving the Terminated Executives ............................................................................................ 10

    III.    THE BROAD RELEASE OF UNKNOWN CLAIMS IS IMPROPER ............... 12

CONCLUSION .................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Emps. Ret. Sys. Of City of St. Louis v. Jones,*
    2021 WL 1890490 (S.D. Ohio May 11, 2021) ................................................................ 11

*In re Dry Max Pampers Litig.,*
    724 F.3d 713, 719 (6th Cir. 2013) ........................................................................ 4

*In re Hewlett-Packard Co. S'holder Derivative Litig.,*
    2015 WL 1153864 (N.D. Cal. Mar. 13, 2015) ........................................................ 12, 13

*Orum Stair, LLC v. GJJG Ents., LLC,*
    2016-Ohio-7064, 72 N.E.3d 190 (10th Dist. 2016) ................................................ 5

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc.,*
    2016 WL 5122565 (S.D. Ohio Sept. 21, 2016) ...................................................... 9

*Quadrant Structured Prod. Co. v. Vertin,*
    102 A.3d 155 (Del. Ch. 2014) ........................................................................ 6

*Shy v. Navistar Int'l Corp.,*
    2022 WL 2125574, at *6 (S.D. Ohio June 13, 2022) ............................................. 7

*UAW v. Gen. Motors Corp.,*
    497 F.3d 615 (6th Cir. 2007) ........................................................................ 9

*UniSuper Ltd. v. News Corp.,*
    898 A.2d 344 (Del. Ch. 2006) ........................................................................ 13

*Williams v. Spitzer Autoworld Canton, L.L.C.,*
    2009-Ohio-3554, 122 Ohio St. 3d 546, 913 N.E.2d 410 ....................................... 5

**Statutes, Rules, & Regulations**

Fed. R. Civ. P. 5 ................................................................................................... 1

**Other Authorities**

4 Newberg on Class Actions § 11:42 (4th ed.) ........................................................... 4

MCL 4th §21 (2004) ............................................................................................... 10

Todd Augenbaum,[1] by his undersigned counsel, respectfully submits this objection to the

proposed settlement (the "Proposed Settlement") of this action brought derivatively on behalf of

FirstEnergy Corporation ("FirstEnergy" or the "Company"), and in response to Plaintiffs' Motion

for Final Approval of Settlement and other relief (the "Motion"), ECF No. 179.[2]

## PRELIMINARY STATEMENT

The Proposed Settlement appears impressive at first glance. However, upon closer

examination, it becomes apparent that Plaintiffs fail to satisfy their burden to establish that the

Proposed Settlement will benefit FirstEnergy. The Company is sacrificing $40 million of

insurance coverage that it would otherwise be able to use to offset liabilities, and effectively

becoming self-insured for the blowback from its bribery scandal in other existing material claims

being prosecuted against it, despite the fact that its insurance coverage would otherwise almost

certainly be exhausted absent a settlement. The Proposed Settlement also does not resolve the

---

[1]     Pursuant paragraph 112 of to the Notice of (I) Pendency and Proposed Settlement of Stockholder Derivative Actions; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Litigation Expenses (the "Notice"), Augenbaum states: his home address is 136-87 71st Rd, Flushing, NY 11367, but he should only be contacted through his undersigned counsel at Abraham, Fruchter & Twersky, LLP ("AF&T"), and through their telephone number. Augenbaum and his counsel do not currently intend to appear at the Settlement Fairness Hearing but reserve their right to do so, in which case they do not intend to call witnesses. The grounds for Augenbaum's objections are set forth herein. Proof that Augenbaum owned shares of FirstEnergy common stock as of the close of business on March 11, 2022 is filed herewith as Exhibit A, which also avers that Augenbaum continues to hold shares of FirstEnergy common stock today and will continue to hold such shares as of the Settlement Fairness Hearing. Augenbaum objects to filing that information on the public record because he is represented by counsel and should only be contacted through his counsel, making it oppressive and non-beneficial to force him to file personal information publicly, especially where Plaintiffs have not done so. Augenbaum also objects to the notice purporting to require copies of this objection, which is being served pursuant to Fed. R. Civ. P. 5, to "also be delivered (by hand, first- class mail, or express service) to Co-Lead Counsel for the Southern District Plaintiffs, Representative Counsel for Defendants, and counsel for the SLC and FirstEnergy at the addresses set forth below such that the objection is received on or before July 21, 2022." (Notice ¶111 (emphasis removed)).

[2]     Capitalized terms undefined herein are defined in the Motion.

cornerstone of the operative complaint, and, instead, could leave Charles Jones ("Jones"), Michael Dowling ("Dowling"), and Dennis Chack ("Chack" and with Jones and Dowling the "Terminated Executives") – each of whom was fired for violating FirstEnergy's policies and code of conduct – in a better position vis-à-vis the Company if approved while, at the same time, unnecessarily releasing potentially valuable claims against the Company's auditors. Finally, the Proposed Settlement stretches too far by releasing broad unknown claims. Thus, as the record currently stands, at a very minimum, further information is needed to find the Proposed Settlement fair, reasonable, and adequate.

## SUMMARY OF ADDITIONAL RELEVANT FACTS

FirstEnergy is defending other actions arising out of the same facts as this Action (the "Direct Claims") which are likely to subject it to hundreds of millions of dollars (or more) in additional settlements or judgments. The Direct Claims in which FirstEnergy believes it will incur a loss in resolving include: a SEC investigation, a civil racketeering suit by the State of Ohio, a class action pursuant to federal securities laws (the "Securities Class Action"), a ratepayers class action, and an investigation by FERC. *See* 2/16/22 Form 10-K at pp.63-65.[3]

Clearsulting LLC ("Clearsulting"), an Ohio entity, is a management consulting firm specializing in financial systems and controls. *See FirstEnergy Corp. and Clearsulting, LLC v. Pircio*, Docket No. 1:20-cv-01966 (the *"Whistleblower* Action"), ECF No. 1, ¶6 (N.D. Ohio). Starting in June 2019, Clearsulting provided consulting services to FirstEnergy. *Id.* at ¶¶11-12.

On August 7, 2020, a former Clearsulting employee, acting as a whistleblower, provided the SEC with evidence of violations of federal law by FirstEnergy. *Whistleblower* Action, ECF No. 14 at ¶¶20, 34. The precise evidence provided to the SEC is undisclosed, but it appears to be

---

[3]     *Available at* https://www.sec.gov/Archives/edgar/data/1031296/000103129622000013/fe-20211231.htm.

convincing. "[O]n August 10, 2020, the SEC, through its Division of Enforcement, issued an order directing an investigation of possible securities laws violations by FirstEnergy, and on September 1, 2020, issued subpoenas to FirstEnergy and certain of its officers." *See* 2/18/21 Form 10-K at 9.[4] FirstEnergy expects to incur a loss in resolving that matter. *See* 4/21/22 Form 10-Q at 8-9.[5]

After reviewing the *Whistleblower* Action, Augenbaum and another stockholder made litigation demands (the "Augenbaum Litigation Demand") on the Board to investigate and assert claims against Clearsulting and PricewaterhouseCoopers ("PwC" and with Clearsulting the "Auditors"), the Company's external auditor, and to institute certain related corporate governance reforms. *See* Exhibit B.

The Augenbaum Litigation Demand was referred to a demand review committee and then to the SLC, but Augenbaum has received no substantive response despite additional inquiries and the passage of more than a year. On June 8, 2022, after reviewing the Proposed Settlement, Augenbaum sent a letter to counsel for all of the Settling Parties seeking to ensure FirstEnergy's claims against the Auditors were preserved and, to the extent appropriate, prosecuted. *See* Ex. C. Six weeks later, after 10:00 pm on July 19, 2022, the SLC responded to Augenbaum's June 8, 2022, letter by stating that it did not believe that the claims against Auditors are released (see Ex. D), and the next morning Plaintiffs' counsel joined in the SLC's position.

## ARGUMENT

The Settling Parties "bear the burden of persuasion that the proposed settlement is fair, reasonable, and adequate." MCL 4th §§21.61, 21.631 (2004); *see also In re Dry Max Pampers*

---

[4]      *Available at* https://www.sec.gov/Archives/edgar/data/1031296/000103129621000020/fe-20201231.htm.

[5]      *Available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/1031296/000103129622000013/fe-20211231.htm

*Litig.*, 724 F.3d 713, 719 (6th Cir. 2013) ("The burden of proving the fairness of the settlement is on the proponents.") (quoting 4 Newberg on Class Actions § 11:42 (4th ed.)). Here, Plaintiffs – the only Settling Party moving for approval of the Proposed Settlement – have not carried their burden for three principal reasons: (1) the Proposed Settlement and unnecessarily releases potentially valuable claims against the Clearsulting and other third parties that should be preserved; (2) the Proposed Settlement does not resolve the allegations laying at the heart of the operative complaint, but instead appears to sacrifice future insurance coverage, making the Company self-insured for amounts likely to exceed available coverage, and potentially benefitting the Terminated Executives; and, (3) the broad release of unknown claims is improper.  If the Proposed Settlement is not rejected, the Settling Parties should be compelled to clarify the record, and to further notify FirstEnergy's stockholders about the aspects of the Proposed Settlement discussed in this memorandum.

## I.     PLAINTIFFS FAIL TO DEMONSTRATE THAT THE POTENTIAL RELEASE OF CLAIMS PROVIDED FOR CLEARSULTING AND OTHER ADVISORS IS FAIR AND REASONABLE

The Federal Judicial Center counsels wariness with respect to "releasing claims against parties who did not contribute to the class settlement." MCL 4th §21.61 & n.957 (citing cases).[6] Nevertheless, the Proposed Settlement, if approved, could potentially release Defendants' "consultants, experts, and attorneys (provided, however, that consultants, experts and attorneys are only "Released Defendants' Persons" insofar as they were engaged by Defendants and are not released under this Stipulation if and to the extent that they were engaged by the Company)." Proposed Settlement §1(y) (emphasis added).

---

[6]     While the quoted language uses the word "class[,]" Section 21 of the Manual for Complex Litigation clarifies that the MCL does not distinguish between different types of representative actions, including class actions and derivative actions. *See* MCL 4th §21 (2004) at p.244.

In addition to unnecessarily releasing parties who are not contributing to the Proposed Settlement, that definition is problematic. FirstEnergy's stockholders cannot understand the scope of "Released Defendants Persons" without knowing which consultants, experts, or attorneys were "engaged by the Company" and which were "engaged by Defendants[.]" *See Sauers v. United Water Restoration Grp.*, Inc., 2017 WL 3425789, at *1 (M.D. Fla. July 21, 2017) (explaining that the court previously rejected a settlement agreement because "ambiguous language in the parties' proposed settlement agreement made [the scope of the release] unclear"). Here, because that information is non-public and because FirstEnergy can only act through its agents (*Orum Stair, LLC v. GJJG Ents., LLC*, 2016-Ohio-7064, ¶ 32, 72 N.E.3d 190, 199 (10th Dist. 2016)), stockholders are forced to guess which consultants would be released by the Proposed Settlement, which is unworkable.

Concerned with a potential release of the Auditors, Augenbaum attempted to seek clarity from the Settling Parties (*see* Exhibit C) but received no substantive written response explaining their position for over six weeks. Thirty-six hours before the objection deadline, the SLC conveyed its position that the claims are not released. *See* Exhibit D. The next day, Plaintiffs' counsel joined the SLC's position.

While Augenbaum is somewhat comforted by the SLC's and Plaintiffs' intention, their positions alone are inadmissible parol evidence. *See Williams v. Spitzer Autoworld Canton, L.L.C.*, 2009-Ohio-3554, ¶21, 122 Ohio St. 3d 546, 552, 913 N.E.2d 410, 417. By contrast to the SLC's letter, which states that the Auditors were "engaged by the Company" (*see* Ex. D), page 3 of the Company's Audit Committee Charter[7] states that the Company's audit committee "shall be solely

---

[7]     Available     at     https://www.firstenergycorp.com/content/dam/investor/files/policies-charters/board-charters/Audit-Charter.pdf.

responsible for the *appointment*, compensation *and retention of* (subject to shareholder ratification, if such ratification is required)" of the Company's independent auditor. (Emphasis added) Because all members of the Audit Committee are Defendants being released from liability, PwC, for example, may be able to assert that claims against it were released while the SLC is still investigating the same. The SLC and FirstEnergy may have convincing arguments to the contrary, but there is no reason for the Company to face any risk of persuasion.

Here, the possibility of FirstEnergy releasing Clearsulting and other potentially liable consultants without receiving any compensation from those entities should be eliminated by amending the Proposed Settlement. Plaintiffs' basis for approval of the Proposed Settlement – a wasting insurance policy and individuals who cannot satisfy a judgment (Motion at 32) – cannot justify potentially releasing claims against profitable consultants. While Clearsulting appears to be privately owned and does not disclose its revenue,[8] PwC disclosed annual revenue exceeding $45 billion globally, with over $18 billion of that coming from the Americas.[9]  Presenting the Proposed Settlement as essentially a limited fund thus depends upon either not releasing third parties or making a showing that is absent from the Motion. Otherwise, the Company is sacrificing (or at the very least handicapping its prosecution of) claims, which are corporate assets, without any benefit or justification. *See, e.g., Quadrant Structured Prod. Co. v. Vertin*, 102 A.3d 155, 181 (Del. Ch. 2014) ("A corporate claim is an asset of the corporation").  Amending the Proposed Settlement to eliminate such a reading (or alternatively not releasing any consultants unless there is a necessary reason to do so) would sufficiently protect the Company's assets.

---

[8]    *See*    https://www.glassdoor.com/Overview/Working-at-Clearsulting-EI_IE1843048.11, 23.htm.

[9]    *See*  https://www.pwc.com/gx/en/about-pwc/global-annual-review-2021/downloads/pwc-global-annual-review-2021.pdf at p.10; *see also* Complaint ¶153.

Finally, even if the SLC is correct that claims against Clearsulting and other third parties are preserved, the Proposed Settlement is unclear about what would happen if Auditors crossclaim against Defendants. Claims against the Auditors could be substantial, and the fact that a portion of the Company's recoveries might be released from the Proposed Settlement, and not be realizable by the Company as a result of the Proposed Settlement, must be explored before the Proposed Settlement can be found to be fair, reasonable, and adequate. For example, the Auditors may claim that they relied upon management representations, and that the Terminated Executives misled them.[10] What then? Would any damages attributable to management be unrecoverable, and FirstEnergy's rights to them waived by the Proposed Settlement? Those questions should be answered before the Proposed Settlement is approved, as they potentially represent another example of the Terminated Executives being further enriched at FirstEnergy's expense.

II.   **PLAINTIFFS FAIL TO DEMONSTRATE THAT THE SETTLEMENT OF CLAIMS AGAINST THE DIRECTORS AND OFFICERS IS REASONABLE**

   A.   **Plaintiffs Fail to Explain How Much Money Resolving the Direct Claims Is Likely to Cost FirstEnergy or What Other Insurance Coverage Is Available to the Company**

The most important factor in evaluating the fairness of a settlement is how the compensation received weighs against the expected value of litigation. *Shy v. Navistar Int'l Corp.*, 2022 WL 2125574, at *6 (S.D. Ohio June 13, 2022). This factor augurs against granting the Motion as the Settling Parties concededly cannot "determine[] the total damages incurred by FirstEnergy" much of which "remain[s] speculative." Motion at 30-31 & n.12. That is a sufficient reason to reject the Proposed Settlement.

---

[10]   *See*   https://us.aicpa.org/content/dam/aicpa/research/standards/auditattest/downloadable documents/au-00333.pdf.

It is almost certain that the defense and resolution of the Direct Claims will cost FirstEnergy more than $220 million. For example, a median recovery in the Securities Class Action, alone, would exhaust the vast majority of available insurance coverage absent the Proposed Settlement based upon the $10 billion drop in the Company's market capitalization.[11] FirstEnergy spent $230 million in connection with its Deferred Prosecution Agreement. The chance of it resolving all remaining Direct Claims within policy limits (or the monetary component of the Proposed Settlement) appears negligible considering the five Direct Claims for which the Company believes a loss is probable, including the Securities Class Action and an Ohio ratepayer class action.

Plaintiffs also make no showing of other insurance policies available to the Company to resolve the Direct Claims. Absent such a showing, the Court should assume that there is no other insurance coverage to prosecute or settle the Direct Claims except for that which would be released pursuant to the Proposed Settlement.

**B.    Plaintiffs Fail to Establish that the $180 Million in Insurance Proceeds Would Otherwise Be Unavailable to Pay for the Direct Claims**

Here, while Plaintiffs point to the $180 million dollars that would be recovered by the Proposed Settlement, they do not explain what would happen absent the Proposed Settlement. It appears to Augenbaum that if the Proposed Settlement is approved, FirstEnergy would effectively become self-insured, responsible for defending and resolving the Direct Claims for which it believes that it is probable that it will incur a loss.

The Motion states that the insurance policies that could pay these claims had approximately $220 million in coverage remaining. Motion at 4, Proposed Settlement §1(y)). The Motion contends that the Proposed Settlement should be approved because those policies were subject to

---

[11]    *See*  NERA Economic Consulting, Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review, at 24 (Jan. 25, 2022), *available at* https://www.nera.com/content/dam/ nera/publications/2022/PUB_2021_Full-Year_Trends_012022.pdf

"erosion to pay ... defense costs and potential settlements in other related actions" (Motion at 4) but that ignores that while these policies are "wasting" they are also "the primary source of any recovery on the scale of damages alleged." *Id.* at 14, 32.

In other words, Plaintiffs' description of the facts acknowledges that the insurance policies that would fund the Proposed Settlement would otherwise be available to defend or resolve the Direct Claims absent the Proposed Settlement. Given those facts, it is Plaintiffs' burden to establish that the $220 million ($180 million of which is to be paid under the Proposed Settlement) would not be utilized by the Company through the Direct Claims. Because resolving the Direct Claims is likely to exhaust the $220 million remaining on the policies, it is unclear why the Company would leave any -- let alone 20% -- of its insurance coverage on the table in any negotiation. Absent unexpectedly favorable resolutions of the Direct Claims, that coverage will almost certainly be exhausted.

Because the record does not reflect what other insurance coverage (if any) is available to FirstEnergy, the Court should require such a showing before approving the Proposed Settlement. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc.*, 2016 WL 5122565, at *5 (S.D. Ohio Sept. 21, 2016) ("[p]arties to the settlement must proffer sufficient evidence to allow the district court to review the terms and legitimacy of the settlement." (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007))). If, instead, FirstEnergy is exchanging $220 million dollars of insurance coverage that would otherwise almost certainly be exhausted in the near future in exchange for a payment of $180 million now, then the Proposed Settlement should

be rejected because, in those circumstances, Plaintiffs fail to explain how the monetary aspect confers any material benefit upon the Company.[12]

### C. Plaintiffs Fail to Account for the Negative Impact of the Broad Release on Existing Litigation and Claims Involving the Terminated Executives

The Proposed Settlement carves out compensation-based claims between FirstEnergy, on the one hand, and the Terminated Executives, on the other hand (the "Compensation Claims"). Proposed Settlement §§1(x), 1(z). That is an extraordinary carve-out considering it is well-settled that the "[r]easonableness [of a settlement agreement] depends on an analysis of the Class allegations and claims and *the responsiveness of the settlement to those claims*." MCL 4th §21.62 (2004) (emphasis added).[13]

The Compensation Claims are central to this Action, which alleges that FirstEnergy paid bribes "driven by the Officer Defendants' selfish interests in executive compensation tied to revenues, contrary to FirstEnergy's long-term interests, and expos[ing] the Company to enormous harm." ECF No. 75 (complaint) at ¶2; *see also id.* at ¶¶4, 9, 87, Prayer F (alleging how Defendants caused FirstEnergy to pay bribes to increase Defendants' compensation and seeking restitution for all compensation obtained by Defendants). That is the crux of this Action, as echoed when the parties briefed, and the Court denied, Defendants' motions to dismiss. *See* ECF No. 86 (motion

---

[12]     A failure to approve the Proposed Settlement does not appear likely to impact the governance reforms contemplated by the Proposed Settlement, most of which have already been implemented or are being implemented. *See* Motion at 17. The Motion states that "[i]f the Settlement is approved, FirstEnergy will also implement additional governance reforms ensuring that the Board takes ownership of political and lobbying activities" but reforms aimed at lobbying were part of the Company's Deferred Prosecution Agreement with the Department of Justice. *See* https://www.sec.gov/Archives/edgar/data/1031296/000103129621000071/ex101-8k7x22x21.htm at §5.F and Attachment B. Whether Plaintiffs' counsel conferred a benefit by causing these governance reforms is entirely independent of whether the Released Claims should be released.

[13]     The use of the term "class" in the MCL 4th is a shorthand for representative actions. *See* n.6, *supra.*

to dismiss opposition) at 2, 5-10; *Emps. Ret. Sys. Of City of St. Louis v. Jones*, 2021 WL 1890490, at *2 (S.D. Ohio May 11, 2021) ("The Company's financial situation also impacted each of the Officer Defendants, since most of their compensation was based on the Company's annual financial performance."); *id.* at *14 ("Plaintiffs allege Defendants were motivated to engage in the Ohio bribery scheme because 'it increased the amount of their performance-based compensation tied to the achievement of certain FirstEnergy financial targets.'"); *see also* Motion at 20.

The Proposed Settlement leaves the Compensation Claims unresolved, undermining the assertion that the Proposed Settlement will allow "FirstEnergy and its newly refreshed and reformed Board to move past the bribery scandal and avoid the uncertainties and distractions of continued litigation that otherwise might have weighed on the Company for years to come." Motion at 4. Instead, the Proposed Settlement, if approved, will allow the Terminated Executives to seek further compensation or damages from FirstEnergy. *See* ECF No. 179-3 at 24 ("Released Defendants' Claims does not include any claims that [Jones, Dowling, and Chack] have or may assert against FirstEnergy, including but not limited to, claims for [various types of compensation] and further including any claims for wrongful termination and/or any and all claims relating thereto."). Moreover, it seems that the release of Released Claims will leave the Terminated Executives with claims against FirstEnergy while limiting FirstEnergy's claims against them. Proposed Settlement §§1(x), 1(z). Augenbaum does not believe that would be fair or reasonable.

Whatever compensation the Terminated Executives believe they may be owed, including any potential clawbacks to which the Company believes it is entitled, must be dwarfed by potential claims the Company would have from the fallout from the Terminated Executives' disloyal conduct. Moreover, it has been reported that "[t]he Board elected not to use the contracted claw back provisions which could have recouped compensation paid during the years investigated" for

"several executives (including the former President and CEO) [who] were terminated by FirstEnergy."[14] If that is correct, then the bilateral carve-outs can only harm FirstEnergy. If it is not correct, the record should be clarified.

At the very least, the Proposed Settlement should not be approved unless the Terminated Executives release claims they may have against the Company given the immense amount of actual and prospective damages caused by the bribery scandal that they spearheaded. Indeed, Plaintiffs identify "the more than $100 million in compensation FirstEnergy paid to the Individual Defendants while the scheme was on going" (Motion at 31 n.12) as a concrete potentially recoverable damage but seemingly ignore the possibility that that amount might *increase* if the Proposed Settlement is approved. The Court should not countenance that possibility as fair, reasonable, or adequate.

## III.  THE BROAD RELEASE OF UNKNOWN CLAIMS IS IMPROPER

The Proposed Settlement would release "any and all claims and causes of action of every nature and description, whether known claims or Unknown Claims … that Plaintiffs, the Company, or the SLC … could have asserted on behalf of the Company that in any way are based on, arise from or relate to the allegations, transactions, facts, matters, disclosures or nondisclosures set forth in the Complaints[.]" Proposed Settlement §1(z). That is extraordinarily broad.

Faced with a similar proposed release in *In re Hewlett-Packard Co. S'holder Derivative Litig.*, 2015 WL 1153864 (N.D. Cal. Mar. 13, 2015), Judge Breyer found that it might be reasonable to release claims relating to HP's acquisition of Autonomy, which laid "at the heart of th[at] litigation[,]" but that a second clause of that would release "all Known Claims arising from the allegations in the Complaints, that Settling Plaintiffs or any other Securities Holder asserted or

---

[14] *See* Pennsylvania Public Utility Comm'n, Bureau of Audits, FE-PA Companies Management and Operations Audit 2022 at 63, *available at* https://www.puc.pa.gov/pcdocs/1748700.pdf.

could have asserted derivatively on behalf of the Company" was too broad to be approved. *Id.* at *3. Judge Breyer reasoned that "it was impossible for the Court or parties to determine the scope and merits of the claims released by this second clause, and because it encompassed a universe of claims that strayed far beyond the Autonomy acquisition at the heart of the litigation, the Court could not say it was a fair and reasonable resolution of this action." *Id.*

Here, Judge Breyer's reasoning applies with considerably more force. The scope and merits of claims released is indeterminate because the Proposed Settlement would release Unknown Claims tangentially related to the claims pled. If approved, that would resolve not only every claim that would be barred by *res judicata* if this case proceeded to judgment, but also a panoply of other rights that are tangential to the Complaint. *See UniSuper Ltd. v. News Corp.*, 898 A.2d 344, 347 (Del. Ch. 2006) ("a release may be overbroad if it could be interpreted to 'encompass any claim that has some relationship—however remote or tangential— to any 'fact,' 'act' or conduct 'referred to' in the Action.' In other words, a release is overly broad if it releases claims based on a common set of tangential facts, as opposed to operative or core facts.") (footnote omitted). The Court should require that the release of claims be limited to those claims pled in the Complaint and, at most, to other claims that are specifically described and that were sufficiently investigated by counsel for Plaintiffs and the SLC.

## CONCLUSION

For the foregoing reasons, the Court should reject the Proposed Settlement.

Dated: July 21, 2022

/s/ W. B. Markovits, Esq.
W. B. Markovits, Esq. (0018514)
MARKOVITS, STOCK & DEMARCO, LLC
119 E. Court Street, Suite 530
Cincinnati, Ohio 45202
(513) 651-3700 – Telephone
(513) 665-0219 – Facsimile
E-mail: BMarkovits@msdlegal.com

Jeffrey S. Abraham (*pro hac vice* forthcoming)
Michael J. Klein (*pro hac vice* forthcoming)
ABRAHAM, FRUCHTER & TWERSKY, LLP
450 Seventh Avenue, 38th Floor
New York, NY 10123
(212) 279-5050 – Telephone
(212) 279-3655 – Facsimile
E-mail: jabraham@aftlaw.com
E-mail: mklein@aftlaw.com

*Counsel for Todd Augenbaum*

## CERTIFICATE OF SERVICE

This certifies that the foregoing Objection was filed on July 21, 2022 via the Court's electronic filing system, which automatically results in service upon counsel of record for the defendants.

/s/  W. B. Markovits, Esq.
W. B. Markovits, Esq. (0018514)

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| EMPLOYEES RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CHARLES E. JONES, et al., <br><br> Defendants, <br><br> and <br><br> FIRSTENERGY CORP., <br><br> Nominal Defendant. | Case No. 2:20-cv-04813 <br><br> Chief Judge Algenon L. Marbley <br><br> Magistrate Judge Kimberly A. Jolson |

### DECLARATION OF TODD AUGENBAUM

I, Todd Augenbaum, declare:

1.　I currently own 200 shares of FirstEnergy Corp. common stock and I have been a shareholder of FirstEnergy continuously since 2018.

2.　I will continue to hold such shares as of the Settlement Fairness Hearing scheduled for August 4, 2022.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 21, 2022.

Todd Augenbaum



PAGE 1 OF 28

**March 1, 2022 - March 31, 2022**

Account Number:      Re-4046
Account Type:        INDIVIDUAL
Account Status:      Pro Elite

**Customer Update:**

**Tax questions? No problem.**
Get helpful tips, tools, and key dates in the Tax Center.
Visit *etrade.com/tax* today.

**E*TRADE Securities LLC**
P.O. Box 484
Jersey City, NJ 07303-0484
1-800-387-2331  etrade.com
Member SIPC

**E*TRADE Pro Elite**
**Investment Account**

## IMPORTANT INFORMATION

**Want to get important documents faster?**
Get your statements, confirms, and tax forms online
with paperless delivery. Enroll at *etrade.com/paperless.*

TODD AUGENBAUM
136-87 71ST ROAD
FLUSHING NY  11367-1942



Redacted



# E✳TRADE

**E✳TRADE Pro Elite**
Investment Account

Account Number: **Re**-4046

Statement Period : March 1, 2022 - March 31, 2022

Account Type: INDIVIDUAL

**STOCKS, OPTIONS & EXCHANGE-TRADED FUNDS (Continued)**

| DESCRIPTION | SYMBOL/ CUSIP | ACCT TYPE | QUANTITY | PRICE | TOTAL MKT VALUE | PORTFOLIO (%) | EST. ANNUAL INCOME | EST. ANNUAL YIELD (%) |
|---|---|---|---|---|---|---|---|---|
| Reda cted | | | | | | | | |
| FIRSTENERGY CORP | FE | Margin | 190 | 45.8600 | 8,713.40 | 0.30 | 296.00 | 3.40% |
| Redac ted | | | | | | | | |

PAGE 7 OF 28

E*TRADE Securities LLC • P.O. Box 484, Jersey City, NJ 07303-0484 • www.etrade.com • 1-800-387-2331 • Member FINRA/SIPC



# E✱TRADE®

## E✱TRADE Pro Elite
### Investment Account

Account Number: 5557-4046

Redacted

Statement Period : March 1, 2022 - March 31, 2022

Account Type: INDIVIDUAL





## DIVIDENDS & INTEREST ACTIVITY

| DATE | TRANSACTION TYPE | DESCRIPTION | SYMBOL/ CUSIP | AMOUNT DEBITED | AMOUNT CREDITED |
|------|------------------|-------------|---------------|----------------|-----------------|
| | | FIRSTENERGY CORP CASH DIV ON 190 SHS REC 02/07/22 PAY 03/01/22 | FE | | 74.10 |
| 03/01/22 | Dividend | | | | |

E*TRADE Securities LLC • P.O. Box 484, Jersey City, NJ 07303-0484 • www.etrade.com • 1-800-387-2331 • Member FINRA/SIPC



| Symbol ▲ | | Last Price $ | Change $ | Change % | Day's Gain $ | Qty # | Price Paid $ | Total Gain $ | Total Gain % | Value $ |
|---|---|---|---|---|---|---|---|---|---|---|



| FE | ⋈ | Trade | 36.97 | -0.22 | -0.59% | -44.00 | 200 | 22.3981 | 2,914.39 | 65.06% | 7,394.00 |



# EXHIBIT B



ABRAHAM, FRUCHTER & TWERSKY, LLP

March 23, 2021

*By e-Mail*

Joseph C. Weinstein, Esq.
Squire Patton Boggs (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114

       Re:  **Todd Augenbaum's Demand Upon FirstEnergy's Board**

Dear Joe,

      I write to advise you that my client, Todd Augenbaum, a shareholder of FirstEnergy Corporation ("FirstEnergy" or the Company"), joins in the November 18, 2020, demand (the "Demand") of Leslie Katz that the board of directors of FirstEnergy investigate, institute litigation and take any other suitable and necessary action on behalf of FirstEnergy against Clearsulting LLC and PriceWaterhouseCoopers LLP.  If you would like me to transmit another copy of the Demand, please let me know.

      I look forward to hearing from you.

                      Sincerely yours,

                      Jeffrey S. Abraham

cc:    Mr. Todd Augenbaum
      William Markovitz, Esq.
      Zachary Schaengold, Esq.



ABRAHAM, FRUCHTER & TWERSKY, LLP

November 18, 2020

*By Federal Express*

Board of Directors
FirstEnergy Corp.
76 South Main Street
Akron, Ohio 44308

Re:  **Demand Upon the Board of Directors to Investigate Claims, Initiate Legal Action and Take Necessary and Appropriate Remedial Measures with Respect to the Conduct of the Company's Auditors**

To the Members of the Board of Directors:

This firm represents Mr. Leslie Katz (also referred to herein as the "Stockholder"), who is, and at all times relevant to the issues addressed in this letter was, a stockholder of FirstEnergy Corp. (with its subsidiaries, "FirstEnergy" or the "Company"). This letter is a demand (the "Demand") pursuant to Ohio Revised Code §1701.59 (2020) that the Company's Board of Directors (the "Board") investigate, institute litigation, and take necessary and suitable actions to recover damages on behalf of FirstEnergy in connection with the actions taken by Clearsulting LLC ("Clearsulting") and PricewaterhouseCoopers LLP ("PwC").

This Demand is limited to claims which Mr. Katz is seeking to have the Company investigate and assert, as appropriate, against Clearsulting and PwC and does not extend to any claims against any of the Company's former or current officers or directors. Mr. Katz is continuing to investigate those claims through demands for books and records he has made pursuant to Ohio law which are now the subject of a complaint filed in the Summit County Court of Common Pleas. *See Katz v. First Energy Co.*, CV-2020-10-2973. Therefore, in making this Demand, Mr. Katz is not conceding the independence or the ability of the Board to impartially consider the filing of any other litigation against any other person whether relating to the subject matter of this Demand or otherwise.

**Background and Relevant Facts**

FirstEnergy, through its subsidiaries, generates, transmits, and distributes electricity in the United States. The company serves approximately six million customers in Ohio, Pennsylvania, West Virginia, Maryland, New Jersey, and New York. FirstEnergy Corp. was founded in 1996 and is headquartered in Akron, Ohio. FirstEnergy's subsidiaries include the wholly owned FirstEnergy Solutions ("FES") and FirstEnergy Nuclear Operating Co. ("FENOC").

Board of Directors
FirstEnergy Corp.
November 18, 2020
Page 2 of 6

In 2017, FirstEnergy lobbied for a Zero-Emissions Nuclear Resource program ("ZEN") energy proposal, calling for increased government subsidies and higher costs for local electricity consumers. In April 2017, legislation was introduced before the Ohio General Assembly that would create ZEN credits to last up to 16 years to compensate nuclear power plants for environmental, energy security, and other attributes benefitting the state and its retail customers. The Ohio House Public Utilities Committee held hearings but did not advance the April 2017 legislation. In October 2017, new legislation was introduced before the Ohio General Assembly providing for a similar ZEN program that provided for an approximately 12-year lifespan for the program, but that legislation also did not pass.

On July 21, 2020, Federal agents arrested Ohio House of Representatives Speaker Larry Householder, FES lobbyist Juan Cespedes, and others in a racketeering conspiracy. An Affidavit in support of a Criminal Complaint filed by Blane J. Wetzel, a Special Agent in the Federal Bureau of Investigation's Public Corruption Squad (the "Wetzel Affidavit") supported those arrests. The Wetzel Affidavit clearly refers to FirstEnergy as "Company A." For example, the Wetzel Affidavit quotes, verbatim, Charles E. Jones's statements on the Company's 4Q 2016 Earnings Call in paragraph 11. There is no other occurrence of the same words in any earnings conference call, let alone during the quarter referenced in the Wetzel Affidavit.

The Wetzel Affidavit details how Mr. Householder was re-entering politics in Ohio while FirstEnergy was "in search of a solution to its nuclear energy problem[.]" Wetzel Affidavit ¶13. The affidavit details that:

> Following his January 2017 trip on Company A's private jet, in March 2017, Householder began receiving quarterly $250,000 payments from Company A into a bank account in the name of a 501(c)(4) entity secretly controlled by Householder called Generation Now. In 2017 and 2018, Householder's Enterprise received into Generation Now, and the entities it controlled, over $2.9 million from Company A. Members of Householder's Enterprise used Company A's payments for their own personal benefit and to gain support for Householder's political bid to become Speaker.
>
> .... The Investigation shows that the plan worked. Householder-backed candidates that benefitted from Company A money received by Generation Now ... helped elect Householder as the Ohio Speaker of the House in January 2019. And Householder fulfilled his end of the *corrupt bargain* shortly thereafter. Three months into his term as Speaker, HB 6 subsidized nuclear energy operations in Ohio through a monthly charge on all Ohioan's energy bills. Neil Clark described the legislation as a "bailout" for Company A's nuclear assets, worth $1.3 billion to Company A.

Wetzel Aff. ¶¶13-14. The Wetzel Affidavit goes on to explain how FirstEnergy began increasing its payments to Generation Now, including a $1.5 million wire on April 30, 2019, and four wires totaling $8 million in May 2019, while HB6 was pending. Wetzel Aff. ¶15. The Wetzel Affidavit

Board of Directors
FirstEnergy Corp.
November 18, 2020
Page 3 of 6

also provides details how after HB6 was signed into law in July of 2019, Company controlled accounts wired another $38 million to defeat a ballot initiative to stop the law from going into effect. *Id.* ¶15. In short, FirstEnergy "entities paid Householder Enterprises[1] $60,866,835.86 in secret payments over the approximately three-year period in exchange for a billion-dollar-bailout." *Id.* ¶18 (footnote omitted).

Those payments were described as "bribe money ... akin to bags of cash" that were unregulated, unreported, and not subject to public scrutiny. In addition, the Wetzel Affidavit explains that Householder spoke with FirstEnergy CEO Jones 30 times during the first half of 2019, and 84 times from early 2017 through July 2019. Householder spoke with First Energy's Vice President of External Affairs Michael J. Dowling 14 times during that time period, and with its Ohio Director of State Affairs 188 times during that period. Wetzel Aff. ¶182. Further, lobbyist Matt Borges is cited in the Affidavit describing an incident in which he drove Mr. Jones and other FirstEnergy executives to the airport in September of 2019, during the ballot initiative fight, during which Mr. Jones requested that Mr. Borges divert the car to a place where a person would be collecting signatures to repeal HB 6, so that he could "get out and talk to him." Wetzel Aff. ¶240.

As a result of the Company's actions, a shareholder class action lawsuit has been filed against the Company, Mr. Jones, James F. Pearson, who served as CFO of FirstEnergy until March 2018, at which time he transitioned to Vice President of Finance of FirstEnergy until his retirement in April 2019, Steven E. Strah, who served as FirstEnergy's CFO from March 2018 until he transitioned to President of FirstEnergy, K. Jon Taylor, who took over as FirstEnergy's CFO from Defendant Strah. That case, styled *Owens v. FirstEnergy Corp. et al.*, Case No. 2:20-cv-03785-ALM-KAJ (S.D. Ohio), exposes the Company to damages relating to alleged violations of the federal securities laws between February 21, 2017 and July 21, 2020, in connection with misrepresenting the value of the Company's business and prospects by overstating its earnings and concealing the significant defects in its internal controls. At the same time, the Securities and Exchange Commission ("SEC") "through its Division of Enforcement, issued an order directing an investigation of possible securities laws violations by the Company, and on September 1, 2020 [and] issued subpoenas to the Company and certain of its officers." *See* Form 12b-25 Notification of Late Filing (11/9/20).

The Company's potential liability for wrongdoing extends far beyond the liabilities imposed by the federal and securities laws and, instead, extends to the very electricity rates which the scheme sought to raise. Thus, the State of Ohio has sued the Company for engaging in a pattern of corrupt activity. *See Ohio ex rel. Yost v. FirstEnergy Corp., et al.*, 20 CV 006281 (Franklin Cty. Common Pleas). Similarly, Ohio consumers are prosecuting a consolidated class actions relating to alleged overcharges on their electricity bills arising from the underlying fraudulent conduct. *See, e.g., Smith v. FirstEnergy Corp., et al.*, Docket No. 2:20-cv-03755 (S.D. Ohio); *Buldas v. FirstEnergy Corp., et al*, Docket No. 2:20-cv-03987 (S.D. Ohio); *Hudock et al. v.*

---

[1] The "Householder Enterprise" is defined in the Wetzel Affidavit as Defendants Larry Householder, Jeffrey Longstreth, Neil Clark, Matthew Borges, Juan Cespedes, Generation Now, and others known and unknown.

Board of Directors
FirstEnergy Corp.
November 18, 2020
Page 4 of 6

*FirstEnergy Corp., et al.,* Docket No. 2:20-cv-03954 (S.D. Ohio). Each of these actions is subjecting the Company to substantial costs and exposure to potentially material dmaages. The harm to the Company from these actions could and should have been prevented. Among other things, the Board's audit committee (the "Audit Committee") is tasked in its charter with oversight of the Company's compliance with legal requirements. To assist it, the Audit Committee relies upon, *inter alia,* audits by PwC and Clearsulting. PwC and Clearsulting apparently failed to bring red flags to the Audit Committee's attention.

On September 1, 2020, FirstEnergy and Clearsulting sued Michael Pircio. *See FirstEnergy Corp. et al. v. Pirico,* 1:20-cv-01966-PAB (N.D. Ohio) (the "*Pirico* Action"). Since approximately June 2019, Clearsulting has provided consulting services to FirstEnergy. *See Pirico* Action, ECF No. 1 (the "*Pirico* Complaint") at ¶1. Mr. Pirico was an employee of Cleasulting "for a very brief period" from March 16, 2020, until July 30, 2020. *Id.* ¶1. "Clearsulting utilized design assessments, which detailed FirstEnergy's existing processes in four areas relevant to the Sarbanes-Oxley Act: Accounts Payable, Cash Management, Payroll, and Tax. Additionally, Clearsulting assisted FirstEnergy's testing of whether the Sarbanes-Oxley Act controls in place within those four areas performed as designed." *Id.* ¶12.

Mr. Pirico participated in Clearsulting's audit and validation of certain FirstEnergy processes and procedures for Sarbanes-Oxley compliance. *Id.* ¶2. During his very brief window of visibility into FirstEnergy's internal control processes, payment procedures, and sensitive employee and vendor information, Mr. Pirico accessed and downloaded otherwise confidential information. *Id.* ¶3.

Mr. Pirico alleges that he was functionally acting as FirstEnergy's employee and that he witnessed potentially prohibited conduct by the Company. *Pirico* Action, ECF No. 14 (the "*Pirico* Answer") at Counterclaim ¶8. After Mr. Householder was indicted, Mr. Pircio realized that Clearsulting's work may have related to the indictment. *Id.* ¶10. Mr. Pircio reviewed the instructions that FirstEnergy gave to Clearsulting, observing that Clearsulting's 2019 audit of FirstEnergy may have violated one or more federal statutes. *Id.* ¶11. Mr. Pircio asked two of his superiors at Clearsulting whether the scope of the 2019 audit of FirstEnergy "was deliberately limited in a way that was not justified in light of the contractual relationship between [FirstEnergy Solutions ("FES")] and FirstEnergy that required FirstEnergy to provide auditing and compliance services for FES." *Id.* ¶12. Mr. Pircio collected from the Clearsulting database approximately fifty-seven files containing documents related to the 2019 internal audit conducted by Clearsulting pursuant to its engagement with FirstEnergy. *Id.* ¶17. On or about August 7, 2020, Mr. Pircio submitted his report and claims, through counsel, to the SEC to report suspected violation of federal laws resulting in the opening of the SEC Investigation. *Id.* ¶20 and *Pirico* Action, ECF No. 11.

PwC has been the Company's independent auditor since 2002. Clearsulting performed internal audits that FirstEnergy would then present to PwC. *Pirico* Answer at Counterclaim ¶7. PwC thus presumably had access to and reviewed the information Mr. Pirico presented to the SEC, causing the SEC to open the SEC Investigation within a matter of days.

Board of Directors
FirstEnergy Corp.
November 18, 2020
Page 5 of 6

PwC was required to apply audit procedures specifically directed to ascertaining whether an illegal act had occurred if specific information came to its attention that provides evidence concerning the existence of possible illegal acts that could have a material indirect effect on the Company's financial statements. *See* Auditing Standard No. 2405. Among the red flags identified by AS 2407 are "[l]arge payments for unspecified services to consultants, affiliates or employees" (AS 2407.09) such as those made by the company and described in the Wetzel Affidavit.

If PwC became aware of such payments, which presumably it did if it was doing its job competently, it was required to obtain an understanding of the nature of the act, the circumstances in which it occurred, and sufficient other information to evaluate the effect on the financial statements, including inquiring of management at a level above those involved, if possible. An auditor must also assure itself that the audit committee is adequately informed as soon as practicable and prior to the issuance of the auditor's report with respect to illegal acts that come to the auditor's attention. *See* AS 2407.17.

## Demand to Bring Action

This letter is intended to demand that the Company investigate potential claims which could be asserted against Clearsulting and PwC, and assert such claims as are appropriate, for, among other things, breach of contract, professional malpractice and aiding and abetting the breach of fiduciary duty by any of FirstEnergy's officers and directors. Liability could be based alternatively on factual findings from your investigation that either or both of Clearsulting and PwC failed to properly perform their audit functions or, to the extent they uncovered any wrongdoing failed, to bring it to the attention of the Audit Committee or other relevant authorities. In that context, the Stockholder notes that Mr. Pirico was able to uncover documents, in a matter of weeks, causing the SEC to commence an investigation within three days of receipt thereof while Clearsulting and PwC, seemingly in possession of the same information, failed to take any action.

Mr. Katz also demands that FirstEnergy institute corporate governance reforms by expanding the scope of its auditor's engagement, pursuant to Auditing Standard No. 2405.24, to entail a greater responsibility for detecting illegal acts. FirstEnergy's auditor should be responsible for testing and reporting on compliance with laws and regulations applicable to lobbying and should report on compliance therewith. To the extent that the Board or any government agency finds that either or both of PwC and Clearsulting failed to act appropriately at the relevant times, they should be replaced as the Company's external and internal auditors, respectively.

In the event the Company fails to promptly commence the investigation which is the subject of this Demand letter or to bring an action within ninety (90) days, Mr. Katz will commence an action derivatively on behalf of First Energy.

Board of Directors
FirstEnergy Corp.
November 18, 2020
Page 6 of 6

If you wish to discuss this matter further or have any questions concerning this Demand letter, please do not hesitate to contact me through your attorney.

Very truly yours,

ABRAHAM, FRUCHTER & TWERSKY, LLP
Jeffrey S. Abraham
Michael J. Klein

cc:  Mr. Leslie Katz
Geoffrey Ritts, Esq. (via email)
Marjorie P. Duffy, Esq. (via email)
Bill Markovits, Esq.
Terence R. Coates, Esq.

# EXHIBIT C



ABRAHAM, FRUCHTER & TWERSKY, LLP

June 8, 2022

***By Email***

Jeroen van Kwawegen, Esq.  Saxena White P.A.   Maeve O'Connor, Esq.
Bernstein Litowitz Berger   Attn: Thomas Curry  John Gleeson, Esq.
 & Grossmann LLP   tcurry@saxenawhite.com Debevoise & Plimpton LLP
Jeroen@blbglaw.com           mloconnor@debevoise.com
                     jgleeson@debevoise.com

Re:  ***Employees Retirement System of the City of St. Louis, et al. v. Jones, et al.,* Case No. 2:20-cv-04813-ALM-KAJ (S.D. Ohio)**

Dear Counsel:

On behalf of FirstEnergy stockholder Todd Augenbaum, I write with respect to the March 11, 2022, Stipulation and Agreement of Settlement in the above-captioned action.[1]

Mr. Augenbaum previously made a demand (the "Demand"), *inter alia,* that the Board institute litigation on behalf of FirstEnergy against Clearsulting LLC and PriceWaterhouseCoopers LLP (together the "Auditors") for failing to properly perform their audit functions while the Company was bribing Householder. Mr. Augenbaum has not yet received any substantive response to the Demand.

The Stipulation defines "Released Defendants' Persons" as including "consultants, experts and attorneys" if they were "engaged by Defendants" but not "if and to the extent that they were engaged by the Company[.]" Stipulation ¶1(y). The Stipulation does not define what it means to be "engaged by" a party, which could allow the Auditors to claim that they were engaged by a Defendant even though the actual engagement ran through the Company, thus resulting in claims against the Auditors being released.

To protect FirstEnergy's interest, please amend the Stipulation so that the Auditors are clearly identified as not being within the scope of Released Defendants' Persons.

Very truly yours,

ABRAHAM, FRUCHTER & TWERSKY LLP
Jeffrey S. Abraham
Michael J. Klein

---

[1] Capitalized terms undefined herein are defined in the Stipulation.

Cc: Geoffrey J. Ritts, Esq. (gjritts@jonesday.com)
   Daniel R. Warren, Esq. (dwarren@bakerlaw.com)
   William S. Scherman, Esq. (wscherman@gibsondunn.com)
   Marcella L. Lape, Esq. (marcie.lape@skadden.com)
   John F. McCaffrey, Esq. (john.mccaffrey@tuckerellis.com)
   Steven S. Scholes, Esq. (sscholes@mwe.com)
   Timothy D. Katsiff, Esq. (katsifft@ballardspahr.com)
   Michael L. Kichline, Esq. (michael.kichline@morganlewis.com)
   Lauren Bell, Esq. (lbell@bsfllp.com)
   Ralph E. Cascarilla, Esq. (rcascarilla@walterhav.com)

# EXHIBIT D

**Debevoise & Plimpton**

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

July 19, 2022

BY EMAIL

Todd Augenbaum
c/o Jeffrey S. Abraham
Michael J. Klein
Abraham, Fruchter & Twersky LLP

Re: *Employees Retirement System of the City of St. Louis, et al. v. Jones, et al.,* Case
No. 2:20-cv-04813-ALM-KAJ (S.D. Ohio)"

Dear Mr. Abraham and Mr. Klein:

    We write on behalf of the Special Litigation Committee of the Board of Directors
of First Energy Corporation (the "SLC") in response to your letter of June 8, 2022.

    We have reviewed your letter and your concerns regarding the scope of the release
provided in the Stipulation of Settlement dated March 11, 2022 (the "Settlement
Stipulation"). We disagree with your contention that PriceWaterhouseCoopers, the
Company's external auditor, or Clearsulting LLC, an entity engaged as a consultant by the
Company, could be read to fall within the definition of "Released Defendants' Persons."
To the contrary, the Settlement Stipulation expressly carves out possible third party claims,
noting that "consultants, experts and attorneys are only "Released Defendants' Persons"
insofar as they were engaged by Defendants and are not released under this Stipulation if
and to the extent that they were engaged by the Company)." Accordingly, there is no
reason to amend the stipulation of settlement.

    The SLC's review of the claims set forth in Mr. Augenbaum's demand remains
ongoing. We will contact you when the SLC has reached the conclusion of its inquiry.

                                        Sincerely,

                                        /s/Maeve O'Connor
                                        Maeve O'Connor
                                        Debevoise & Plimpton LLP

www.debevoise.com

*Counsel for the Special Litigation*
*Committee of the Board of Directors of First*
*Energy Corp.*