UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JENNIFER L. MILLER, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ANDERSON, *et al.*, ) | Judge John R. Adams |
| ) | |
| Defendants, ) | Case No. 5:20-cv-01743-JRA |
| ) | |
| and ) | |
| ) | |
| FIRSTENERGY CORP., ) | |
| ) | |
| Nominal Defendant. ) | |

**MEMORANDUM IN SUPPORT OF MOTION
FOR DISCLOSURE OF EX PARTE COMMUNICATIONS
AND INDEPENDENT RESEARCH BY THE COURT**

To protect the fairness and transparency of the proceedings here, the undersigned parties respectfully request disclosure of all ex parte communications and independent investigation engaged in by the Court or its staff.

It has become apparent that, on several occasions at least, the Court may have engaged in ex parte communications about this case or its parties and undertaken independent investigation into the underlying facts.  Most recently, via order dated July 29, 2022, the Court solicited ex parte submissions by five law firms (or law firm groups) who previously expressed interest in appointment as lead counsel.  (Doc. 335.)  At least four responded to the Court's order (Doc. 345 at 2), but only one law firm's submission has been provided to the parties in this matter (Doc. 345-1).  The others have not been disclosed to the parties, though the Court stated that the submissions would be "docket[ed] [] for review by the existing counsel in the matter."  (Doc. 335.)  In an order entered on August 15, 2022, the Court referenced another ex parte

communication from a firm (Doc. 345 at 2), but that communication also has not been provided to the parties—nor have any other communications the Court may have received.

Ex parte communications and reliance on outside-the-record sources have resulted in inaccurate information being injected into the proceedings here. One ex parte communication made false assertions regarding FirstEnergy's auditor and a former director. The Court referenced those assertions during a hearing, and the full ex parte communication has never been disclosed to the parties. The Court also relied on an audit report it located on the internet—not part of the record in this case—that contains false information, and relied on that false information when deciding a motion.

To ensure fairness and transparency, the Court should fully disclose all past ex parte communications and independent investigation, as required by Sixth Circuit case law and the Code of Judicial Conduct, and not entertain future ex parte communications or independent investigation.

I.  RELEVANT FACTUAL BACKGROUND

   A.  Recent Ex Parte Communications

The Court has solicited, received, and failed to disclose ex parte communications. On July 29, 2022, the Court noted that it had received letters of interest from five law firms (or law firm groups) seeking appointment as lead counsel in this matter. (Doc. 335 at 1.) The Court then solicited discovery plans from each, requesting information directly related to this litigation, including "the subjects on which discovery is to be sought, the nature and extent of discovery, any potential problems that may arise with discovery, the possible use of experts to aid in discovery or litigation, and the dates by which" discovery could be completed. (*Id.*)

On August 15, 2022, the Court confirmed that it received the discovery plans it had solicited. (Doc. 345 at 2.) The Court also reported that one law firm withdrew its application

following the discovery of a possible conflict of interest. (*Id.*) It is unclear whether that firm submitted a discovery plan. Despite receiving at least four discovery plans and previously assuring the parties that it would "docket [the discovery plans] for review by the existing counsel in the matter" (Doc. 355 at 1), the Court has disclosed only one discovery plan to date. (*See* Doc. 345-1.) In addition to failing to disclose the other discovery plans, the Court has not disclosed the ex parte communication(s) regarding a potential conflict of interest with the law firm that withdrew its application, or any other ex parte communications it may have had with the other four applicants (or anyone else). The Court's law clerk is reported to have engaged in discussions with the media regarding this case, including describing how the Court would rule on future issues arising in the case. (*See* Doc. 345-1 at 5 n.3 (citing and quoting "David Boies Wants To Take Over FirstEnergy Shareholder Suit," Law360, July 26, 2022).)

      B.      **Past Ex Parte Communications**

On March 9, 2022, the Court held a status conference to discuss the parties' proposed global settlement of all derivative claims asserted on behalf of and for the benefit of FirstEnergy. At the status conference, the Court stated that "a shareholder" had sent to the Court a "letter" concerning this litigation. (Doc. 280, 3/9/22 Tr. at 34:19-22; *id.* at 35:1 ("So this question comes to me in a letter form.").) The Court quoted extensively from the ex parte communication and read much of it into the record:

- "Why aren't any of the board of directors being sued or penalized for their lack of oversight on this $60 million of illegal payments? The SEC uses claw backs in various situations where there are issues like this. It's hard to believe no one on the board was aware of these illegal payments and questioned whether they were legitimate business expenses." (*Id.* at 35:2-8.)

- "Donald T. Misheff occupied the position of non-executive chairman at FirstEnergy Corporation. From a review of websites, Donald was a CPA and former managing partner at Ernst & Young in Akron. Wouldn't he not only have the expertise but also be in a position to be aware of the $60 million in illegal payments?" (*Id.* at 35:10-15.)

- "Ernst & Young audited the financial statements of FirstEnergy. What is their role in overlooking or missing payments? What discussions did they have with Misheff, their former managing partner?" (*Id.* at 35:16-19.)

- "What about the FirstEnergy board members who were on the audit committee, including Misheff? Were they aware of these payments or were they negligent in not noticing -- or noticing $60 million?" (*Id.* at 35:20-23.)

The Court invited this shareholder, and others, to "come forward" to pursue this litigation, expressing that it was "hopeful[]" that a shareholder would do so. (*Id.* at 15:14-15; 31:6-7; 34:24-25; 38:4-5).

The ex parte communication was factually inaccurate. Notably, the Court cited the communication's false assertion that Ernst & Young audited FirstEnergy. (*See id.* at 35:16-19.) Ernst & Young is not FirstEnergy's auditor, however, and it was not FirstEnergy's auditor at any time during the relevant period.[1]

On March 14, 2022, the Court filed an incomplete version of the "letter" on the docket, describing it as "correspondence from a member of the public." (Doc. 287.) The filed document is an email dated February 16, 2022, with the "To" and "From" lines redacted. (Doc. 287-1; Doc. 287 (noting redaction of "personal information").) The filed document shows two staples in the upper left corner, but the docketed item itself is only one page. (Doc. 287-1.) The docketed item itself appears to be an amalgam of at least two communications: a printout of an email that was then forwarded to the Court in some fashion, perhaps by facsimile or in hard copy with something stapled to it.

---

[1] *See* FirstEnergy Corp. Annual Report on Form 10-K (filed Feb. 16, 2016) (identifying PricewaterhouseCoopers LLP as FirstEnergy's auditor); FirstEnergy Corp. Annual Report on Form 10-K (filed Feb. 21, 2017) (same); FirstEnergy Corp. Annual Report on Form 10-K (filed Feb. 20, 2018) (same); FirstEnergy Corp. Annual Report on Form 10-K (filed Feb. 19, 2019) (same); FirstEnergy Corp. Annual Report on Form 10-K (filed Feb. 10, 2020) (same); FirstEnergy Corp. Annual Report on Form 10-K (filed Feb. 18, 2021) (same); FirstEnergy Corp. Annual Report on Form 10-K (filed Feb. 16, 2022) (same).

The Court's docket entry did not address any of the circumstances of the ex parte communication—who the participants were; when the Court received it; how the Court received it; who initiated the communication; whose handwriting appears on the document; what, if anything, the Court communicated to the other participants in the communication; whether there were any other associated communications; and what was attached to the document. Neither does the docket entry explain how the Court knew (as it stated during the March 9 hearing) that the author of the email is a "shareholder"—the email does not say the author is a shareholder.

C. **Independent Investigation**

In addition to engaging in ex parte communications, the Court apparently has independently investigated facts relating to this matter. The Court recently relied on its own independent research in denying the parties' joint motion to dismiss (Doc. 320), which sought dismissal of this action without prejudice in light of pending settlement proceedings in the related Southern District of Ohio action.

In its July 5, 2022 order denying the motion to dismiss, the Court directly quoted and relied upon a snippet of a 190-page audit report by the Pennsylvania Public Utility Commission that the Court apparently found on the internet. (*See* Doc. 331 at 5 (quoting a statement in the report that "[t]he Board elected not to use the contracted claw back provisions which could have recouped compensation paid during the years investigated").) The Court relied on this report, which is not in the record (and is hearsay besides), to make a finding of "fact" that "despite an ability to seek compensation from those who allegedly perpetrated and benefitted from the bribery scheme, FirstEnergy has declined to do so." (*Id.*) But the Court never provided the parties notice that it intended to rely on this report. Nor did it provide the parties with an opportunity to respond.

The audit, in fact, was not an audit of FirstEnergy. Rather, it was an audit of four subsidiaries doing business in Pennsylvania, none of which are involved in this case. Moreover, the audit report contained outdated and inaccurate information. The audit was conducted in 2021 and concluded on September 13, 2021; it did not purport to reflect the current situation as of July 2022. And the Court's finding based on this outside-the-record source—that the Board had "declined" to seek any clawbacks—was not true. (*See* Doc. 331.) As disclosed in FirstEnergy's most recent 10-Q, the Company is pursuing such measures. Specifically, "[i]n November 2021, after a determination by the Compensation Committee of the [FirstEnergy] Board that a demand for recoupment was warranted pursuant to the Recoupment Policy, [FirstEnergy] made a recoupment demand to Mr. Jones of compensation previously paid to Mr. Jones totaling approximately $56 million, the maximum amount permissible under the Recoupment Policy." FirstEnergy Corp., Quarterly Report on Form 10-Q (filed July 26, 2022).

## II.  ARGUMENT

The parties file this motion reluctantly. However, in light of the known ex parte communications, the specter of others presently unknown to the parties, the threat of future ones, and the Court's independent investigations, the parties are left with no choice but to seek full disclosure to ensure fair and open proceedings here.

### A.  Ex Parte Communications And Independent Investigation Are Prohibited.

The Code of Judicial Conduct bars ex parte communications except in strictly limited circumstances. It provides: "A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter." Code of Judicial Conduct R. 2.9(A); Code of Conduct for U.S. Judges Canon 3(A)(4) (similar). The official comments to Rule 2.9 explain that "[t]he proscription against communications concerning a

-6-

proceeding includes communications with lawyers, law teachers, *and other persons who are not participants in the proceeding,* except to the limited extent permitted by this [R]ule." Code of Judicial Conduct R. 2.9 cmt. 3 (emphasis added).

Rule 2.9 also prohibits a court from independently investigating the facts of a pending case: "[a] judge shall not investigate facts in a matter independently." Code of Judicial Conduct R. 2.9(C); *see also Sherrills v. Ryan*, 1985 WL 14008, at *1-2 (6th Cir. Nov. 11, 1985) (holding that "it is impermissible for a trial judge to gather or consider facts outside the record" and remanding because "the court's decision was based on an improper ex parte factual investigation"). Comment [6] to Model Rule 2.9 makes clear that the "prohibition against a judge investigating the facts in a matter extends to information available in all mediums, including electronic."

When a court receives or participates in an ex parte communication, it has a duty to make a prompt and full disclosure to the parties. "[I]f a judge inadvertently receives an unauthorized ex parte communication bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond." Code of Judicial Conduct R. 2.9(B); Code of Conduct for U.S. Judges, Canon 3(A)(4) (similar); *see also Rushen v. Spain*, 464 U.S. 114, 119 (1983) ("When an *ex parte* communication relates to some aspect of the trial, the trial judge generally should disclose the communication to counsel for all parties."); *Edgar v. K.L.*, 93 F.3d 256, 256-58 (7th Cir. 1996) (removing judge from the case where the judge refused to disclose the contents of his ex parte communications based on his assertion of "judicial privilege"); *cf. Knop v. Johnson*, 977 F.2d 996, 1011 (6th Cir. 1992) (ex parte communications were improper but "relatively

harmless" where all counsel and the court received the same information at the same time and where the trial court did not rely on such information).

The Sixth Circuit disapproves of ex parte communications except in very limited circumstances, because "*[e]x parte* communications from a judge's chambers . . . are 'clearly at odds with our adversary system of justice.'" *Knop*, 977 F.2d at 1011 (quoting *Price Bros. Co. v. Philadelphia Gear Corp.*, 649 F.2d 416, 425 (6th Cir. 1981)); *see also Sherrills*, 1985 WL 14008, at *1 (remanding where district court relied on ex parte investigation in dismissing case); *United States v. Carmichael*, 232 F.3d 510, 517 (6th Cir. 2000) ("As a general rule of thumb, in all but the most exceptional circumstances, ex parte communications with the court are an extraordinarily bad idea."); *United States v. Minsky*, 963 F.2d 870, 874 (6th Cir. 1992) ("The value of a judicial proceeding . . . is substantially diluted where the process is *ex parte* because the court does not have available the fundamental instrument of judicial judgment: an adversary proceeding in which both parties may participate.") (quoting *In re Taylor*, 567 F.2d 1183, 1188 (2d Cir. 1977)).[2]

The Sixth Circuit has made clear that this prohibition applies to communications with third parties. *See Gibson v. R.G. Smith Co.*, 915 F.2d 260, 263 (6th Cir. 1990) (holding that "[a] district court may not rely upon an *ex parte* communication with a third party in determining the merits of an action" and concluding that the "district court acted improperly by consulting" with an individual whose role was "akin to that of a third party investigator"); *see also Knop*, 977

---

[2] The Code of Judicial Conduct permits ex parte communications only in strictly limited circumstances, not applicable here: "When circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided: [] the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication; and [] the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond." Code of Judicial Conduct R. 2.9(A)(1)(a)-(b); Code of Conduct for U.S. Judges, Canon 3(A)(4)(a)-(d) (similar); *see also Gerber v. Veltri*, 702 F. App'x 423, 433 n.7 (6th Cir. 2017) (permitting judge's "discussion with defense counsel" because it was for "limited, administrative purposes").

F.2d at 1011 (holding that judge's "requests for additional information [from a third-party] should have been placed on the record").

The Sixth Circuit has also held that it is "impermissible for a trial judge to deliberately set about gathering facts outside the record." *Knop*, 977 F.2d at 1011 (quotations omitted); *Price Bros. Co. v. Philadelphia Gear Corp.*, 629 F.2d 444, 447 (6th Cir. 1980) ("Unquestionably, it would be impermissible for a trial judge to deliberately set about gathering facts outside the record of a bench trial over which he was to preside."). The Supreme Court has stated that a judge's reliance on an "extrajudicial source" is a "common basis" for "establishing disqualifying bias or prejudice." *Liteky v. United States*, 510 U.S. 540, 551 (1994) (emphasis omitted).

Federal courts across the country have emphasized the dangers posed by ex parte communications and independent investigations.[3] In particular, federal courts warn against gathering facts from off-the-record sources or communications, including from third parties. *See, e.g.*, *United States v. Craven*, 239 F.3d 91, 103 (1st Cir. 2001) (holding that sentencing court erred in undertaking ex parte communication with a witness, noting that "[w]hen a judge receives information that does not enter the record, the reliability of that information may not be tested through the adversary process[, and] it is difficult, if not impossible, for a judge, no matter how sincere, to purge that information from her mind—and, equally, to maintain the perception of impartiality"); *Johnson v. United States*, 780 F.2d 902, 910 (11th Cir. 1986) (holding that a trial judge may not "undertake an independent mission of finding facts" and indicating the trial court would have erred had it relied on the "outside sources"—i.e., medical journals not in the record—that it reviewed prior to hearing expert testimony).

---

[3] *See, e.g.*, *Thompson v. Greene*, 427 F.3d 263, 269 n.7 (4th Cir. 2005) (ex parte communications are "contrary to one of the basic tenets of our adversary system"); *J.B. v. Washington Cnty.*, 127 F.3d 919, 925-26 (10th Cir. 1997) ("We recognize that *ex parte* communications may be fraught with peril, and that judges must take great care with respect to *ex parte* communications even in the most exigent of circumstances . . . .").

### B. The Court Should Fully Disclose All Ex Parte Communications And Independent Investigation.

The circumstances here highlight why ex parte communications and independent investigation are forbidden, particularly in light of the inaccuracies in the ex parte communications and independent research relied upon by the Court. To date, the parties have not received copies of all ex parte communications relating to the solicited discovery plans, even though it has been two weeks since such plans were due and despite the Court's prior acknowledgement that such plans must be made available to the parties for review. (Doc. 335.) *See* Code of Judicial Conduct R. 2.9(B) ("If a judge inadvertently receives an unauthorized ex parte communication bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond.").

Nor were the parties promptly notified of the communication that was docketed on March 14, and the communication still has not been fully disclosed. To the extent the Court received the communication docketed on March 14 on or around the date that appears on the face of the communication (February 16, 2022), the Court had a lengthy period of time to review the communication before the March 9 status conference. The Court obviously considered the communication's substance as evidenced by the fact that the Court read a lengthy portion of it into the record, and based questions to counsel on the communication. The communication, however, contained factual inaccuracies and assumed as fact disputed issues in the case. In addition, it appears the Court further considered the communication with respect to its management of the litigation as, on the basis of the communication, the Court invited this shareholder or others to "come forward" and suggested it "may appoint counsel" for the case. (Doc. 280, 3/9/22 Tr. at 38:4-10; 35:24-36:5.)

Likewise, the Court's independent investigation led it astray and was unfair to the parties, who had no chance to respond to what the Court "found" prior to entry of the July 5 order denying the motion to dismiss. It is simply untrue that "FirstEnergy has declined to" pursue any clawbacks—which the Court asserted as a "fact" in the July 5 order, based on hearsay in the Pennsylvania audit that it found on the internet.

To the extent the Court has consulted any other outside-the-record sources of information about the parties or matters addressed in this case, full disclosure should be made to the parties, so that they can respond as may be appropriate, including to the forthcoming motion to intervene by Todd Augenbaum (*see* Doc. 345 at 2).

Accordingly, the moving parties request disclosure of the following information:

1. All ex parte communications, oral or written, to or from the Court relating to this litigation, to FirstEnergy, or to any of the other parties;[4]

2. Complete, unredacted copies of all written ex parte communications to or from the Court, including Document No. 287-1;[5] and

3. As to each ex parte communication:

    a. All participants to the communication, including who initiated the communication;[6]

    b. The date of the communication;

    c. The place of the communication;

    d. The means of the communication (e.g., email, letter, facsimile, telephone, in-person meeting)

    e. The contents of the communication to or from the Court; and

---

[4] If the Court wishes to protect the identities of individuals from public disclosure, the ex parte communications could be filed under seal and disclosed to the parties only.

[5] With respect to Document No. 287-1, which has two staples in the upper left corner of the document, all pages and attachments should be disclosed.

[6] With respect to Document No. 287-1, the Court should disclose both the author of the email and, if it was forwarded to the Court by someone else, the person who forwarded it.

    f.  Any follow-up to the communication.

  4.  To the extent the Court has conducted any independent investigation of the facts or parties—including via the internet—the parties request that the Court disclose all sources or persons consulted and provide copies of any materials the Court consulted. *See* Code of Judicial Conduct R. 2.9(C).

The parties additionally request that the Court not receive any additional ex parte "submissions" or other communications, and that any submissions or other communications be placed on the docket promptly or otherwise be provided to the parties.

Finally, the parties request that the Court refrain from taking any action in this case pending the requested disclosures. *Cf.* Code of Judicial Conduct R. 2.9(B) ("[I]f a judge inadvertently receives an unauthorized ex parte communication bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the substance of the communication and ***provide the parties with an opportunity to respond***.") (emphasis added); Code of Conduct for U.S. Judges, Canon 3(A)(4) (similar).

## III. CONCLUSION

For the foregoing reasons, the Court should make the disclosures described above and refrain from taking further action until such disclosures have been made.

Dated: August 20, 2022

/s/ Kathleen A. Nitschke (with permission)
Kerin Lyn Kaminski (0013522)
Karen L. Giffen (0042663)
Kathleen A. Nitschke (0073397)
GIFFEN & KAMINSKI, LLC
1300 East Ninth Street, Suite 1600
Cleveland, OH 44114
Telephone: (216) 621-5161
Facsimile: (216) 621-2399
Email: kkaminski@thinkgk.com
Email: kgiffen@thinkgk.com
Email: knitschke@thinkgk.com

Maeve O'Connor (admitted *pro hac vice*)
John Gleeson (admitted *pro hac vice*)
Susan Reagan Gittes (admitted *pro hac vice*)
DEBEVOISE & PLIMPTON, LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: mloconnor@debevoise.com
Email: jgleeson@debevoise.com
Email: srgittes@debevoise.com

*Attorneys for the Special Litigation Committee of the Board of Directors of Nominal Defendant FirstEnergy Corp.*

Respectfully submitted,

/s/ Geoffrey J. Ritts
Geoffrey J. Ritts (0062603)
Robert S. Faxon (0059678)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Email: gjritts@jonesday.com
Email: rfaxon@jonesday.com

Marjorie P. Duffy (0083452)
Jordan M. Baumann (0093844)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, Ohio 43215
Telephone: (614) 469-3939
Facsimile: (614) 461-4198
Email: mpduffy@jonesday.com
Email: jbaumann@jonesday.com

*Attorneys for Defendants Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil, III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Leslie M. Turner, Steven E. Strah, and K. Jon Taylor*

/s/ Jeremy R. Teaberry (with permission)
Timothy D. Katsiff (admitted *pro hac vice*)
David L. Axelrod (admitted *pro hac vice*)
Jeremy R. Teaberry (ID No. 0082870)
Emilia McKee Vassallo (admitted *pro hac vice*)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999
Email: kattsifft@ballardspahr.com

       Email: axelrodd@ballardspahr.com
       Email: teaberryj@ballardspahr.com
       Email: mckeevassalloe@ballardspahr.com

       *Attorneys for Defendant James F. Pearson*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on August 20, 2022. Notice of this filing will be sent to all electronically registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Marjorie P. Duffy
Marjorie P. Duffy (0083452)

*One of the Attorneys for Defendants Michael J. Anderson, Steven J. Demetriou, Julia L. Johnson, Donald T. Misheff, Thomas N. Mitchell, James F. O'Neil, III, Christopher D. Pappas, Sandra Pianalto, Luis A. Reyes, Leslie M. Turner, Steven E. Strah, and K. Jon Taylor*