## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JENNIFER L. MILLER, Derivatively on behalf of FIRSTENERGY CORPORATION, | CASE NO. 5:20CV1743 |
| | JUDGE JOHN R. ADAMS |
| Plaintiff, | |
| v. | |
| MICHAEL J. ANDERSON, STEVEN J. DEMETRIOU, JULIA L. JOHNSON, CHARLES E. JONES, DONALD T. MISHEFF, THOMAS N. MITCHELL, JAMES F. O'NEIL III, CHRISTOPHER D. PAPPAS, SANDRA PIANALTO, LUIS A. REYES, LESLIE M. TURNER, STEVEN E. STRAH, ROBERT REFFNER, MICHAEL J. DOWLING, AND EBONY YEBOAH-AMANKWAH, | |
| Defendants, | |
| and | |
| FIRST ENERGY CORPORATION | |
| Nominal Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF TODD AUGENBAUM'S
## MOTION TO INTERVENE, APPOINT LEAD COUNSEL AND LEAD PLAINTIFF

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

SUMMARY OF RELEVANT FACTS AND PROCEEDINGS .................................... 1

ARGUMENT ................................................................................................................. 3

    I.     MR. AUGENBAUM SHOULD BE ALLOWED TO
          PERMISSIVELY INTERVENE ..................................................................... 3

          A.     Intervention Is Being Timely Sought ........................................... 3

                1.     The Point to Which the Suit Has Progressed Supports
                        Allowing Mr. Augenbaum to Intervene ......................................... 4

                2.     Mr. Augenbaum Has a Proper Purpose for Seeking to
                        Intervene ......................................................................................... 4

                3.     The Length of Time Preceding the Application During
                        Which Mr. Augenbaum Knew or Should Have Known of
                        His Interest in the Case Further Supports His Motion to
                        Intervene ......................................................................................... 4

                4.     There Exists No Prejudice to the Original Parties Due to the
                        Proposed Intervenor's Failure to Promptly Intervene .................... 5

                  5.     Any Unusual Circumstances in this Case Militate in Favor
                        of Allowing Mr. Augenbaum to Intervene ................................... 5

          B.     Mr. Augenbaum Has a Substantial Legal Interest in the Subject
               Matter of the Case ...................................................................................... 8

          C.     Intervention Will Allow Mr. Augenbaum to Protect FirstEnergy's
               Interest ........................................................................................................ 9

          D.     Plaintiffs Cannot Adequately Protect FirstEnergy's Interests ................... 9

          E.     The Court Should Exercise Its Discretion and Allow Mr.
               Augenbaum to Intervene ........................................................................... 9

    II.     THIS COURT SHOULD APPOINT MSD AND AFT AS CO-LEAD
          COUNSEL ..................................................................................................... 9

    III.     THIS COURT SHOULD APPOINT MR. AUGENBAUM AS LEAD
          PLAINTIFF .................................................................................................... 10

CONCLUSION .............................................................................................................. 11

i

## TABLE OF AUTHORITIES

**Cases**

*Arduini v. Hart,*
774 F.3d 622 (9th Cir. 2014) ................................................................................... 8

*Bushansky v. Armacost,*
2014 WL 5335255 (N.D. Cal. Oct. 17, 2014) ........................................................ 5

*Coal. to Defend Affirmative Action v. Granholm,*
501 F.3d 775 (6th Cir. 2007) ................................................................................... 3

*Cohen v. Beneficial Loan Corp.,*
337 U.S. 541 (1949)................................................................................................. 9

*Grutter v. Bollinger,*
188 F.3d 394 (6th Cir.1999) .................................................................................... 3

*Howe v. City of Akron,*
2015 WL 8180510 (N.D. Ohio Dec. 7, 2015) ........................................................ 4

*In re Ambac Fin. Grp., Inc., Deriv. Litig.,*
257 F.R.D. 390 (S.D.N.Y. 2009) ............................................................................ 9

*In re Chemed Corp., S'holder Deriv. Litig.,*
2017 WL 1712530 (D. Del. Apr. 25, 2017)........................................................... 10

*In re Facebook, Inc. S'holder Deriv. Privacy Litig.,*
367 F. Supp. 3d 1108 (N.D. Cal. 2019) .................................................................. 8

*Jansen v. City of Cincinnati,*
904 F.2d 336 (6th Cir. 1990) ................................................................................... 4

*Kamen v. Kemper Fin. Servs., Inc.,*
500 U.S. 90 (1991)................................................................................................... 9

*N. Miami Beach Gen. Employees Retirement Fund v. Parkinson,*
2011 WL 12465137 (N.D. Ill. July 5, 2011)........................................................... 10

*Purnell v. City of Akron,*
925 F.2d 941 (6th Cir.1991) .................................................................................... 3

*Ross v. Bernhard,*
396 U.S. 531 (1970)................................................................................................. 8

*Stupak-Thrall v. Glickman,*
226 F.3d 467 (6th Cir. 2000) ................................................................................... 4

*Tansey v. Rogers,*
2016 WL 3519887 (D. Del. June 27, 2016)............................................................ 8

*United States v. BASF–Inmont Corp.*,
  1995 WL 234648 (6th Cir. 1995) ......................................................................................... 4

*United States v. City of Detroit*,
  2012 WL 6088322 (E.D. Mich. Dec. 6, 2012) ...................................................................... 4

**Statutes**

Fed. R. Civ. P. 23.1 ............................................................................................................. 1, 5

Fed. R. Civ. P. 24 ........................................................................................................ 1, 3, 5, 11

**Other Authorities**

Restatement (Second) of Judgments § 26 (1982) ................................................................. 6

Todd Augenbaum, by and through his undersigned attorneys, respectfully submits this memorandum in support of his motion to intervene in this shareholder derivative action (the "Action") pursuant to Federal Rule of Civil Procedure 24(b), to have his counsel appointed as lead counsel, and to be appointed the lead plaintiff.

## INTRODUCTION

On July 13, 2022, the Court, after concluding that the current parties were not diligently prosecuting this Action, stated its intention to appoint counsel that will be willing to diligently prosecute this matter. After submissions by several law firms, the Court ordered the filing of this motion as soon as practicable so that it could appoint Markovits, Stock & Demarco, LLC ("MSD") and Abraham, Fruchter & Twersky, LLP (AFT") as Co-Lead Counsel.

## SUMMARY OF RELEVANT FACTS AND PROCEEDINGS

On July 21, 2020, Federal agents arrested Ohio House of Representatives Speaker Larry Householder and others in a racketeering conspiracy. FirstEnergy has since admitted that it conspired to commit honest services wire fraud in violation of federal law and agreed to pay a $230 million monetary penalty. *See* https://www.justice.gov/usao-sdoh/pr/firstenergy-charged-federally-agrees-terms-deferred-prosecution-settlement.

On June 2, 2022, the Court found that "the parties are no longer actively litigating the case before this Court despite the absence of any stay" and ordered the Parties "to show cause why the Court should not appoint counsel that will fully and fairly litigate this derivative matter on behalf of FirstEnergy." ECF No. 316 at pp.2-3.

On July 13, 2022, the Court held that because "the parties have made clear that they do not intend to prosecute the matter before this Court, the Court will appoint counsel." ECF No. 332 at p.1. The Court further held that "[c]onsistent with [its] authority to oversee this derivative action

1

to its conclusion, the Court will appoint counsel that will be willing to diligently prosecute this

matter and seek approval from this Court of any potential resolution, if one is reached, as required

by rule." *Id.* The Court ordered any written submissions to serve as lead counsel must be received

by July 25, 2022. *Id.* at 2.

On July 26, 2022, the Court docketed an Order stating that it had "received letters of interest

from five different law firms" and attaching the five letters received thereto. *See* ECF No. 334.

The Order also stated that "[a] separate notice of hearing will issue for the Court to proceed further

in this matter." ECF No. 334.

On July 29, 2022, the Court ordered the firms that had sent letters in response to the July

13, 2022, Order, to "provide filings that include a description of what they believe will be the

subjects on which discovery is to be sought, the nature and extent of discovery, any potential

problems that may arise with discovery, the possible use of experts to aid in discovery or litigation,

and the dates by which they believe discovery could be completed" by no later than August 5,

2022. ECF No. 335.

On August 15, 2022, the Court issued an Order announcing its intention to appoint MSD

and AFT as lead counsel in this matter. ECF No. 345. The Court instructed MSD & AFT to file a

motion to intervene on behalf of their client as soon as practicable after finding that the firms:

> are best suited to be named lead counsel in this matter. MSD & AFT represent the
> sole shareholder that timely objected before the Southern District of Ohio placing
> them in a unique position. The firms also have significant experience as lead
> counsel in derivative actions. Moreover, MSD has been previously appointed lead
> counsel by the Ohio Attorney General in litigation that impacted Ohio citizens.
> Given the allegations in this matter and their impact on the citizens of Ohio, such
> prior experience is invaluable. Additionally, the proposed path of discovery
> provided by these firms1 demonstrates substantial knowledge of the issues at play
> in this litigation and the discovery that may be necessary to ultimately resolve those
> issues. Accordingly, the law firms of MSD and AFT are the best positioned to serve
> as lead counsel.

ECF No. 345 at p.2.

2

On August 25, 2022, Plaintiffs joined a motion to dismiss all claims asserted with prejudice. ECF No. 353.

## ARGUMENT

### I.  MR. AUGENBAUM SHOULD BE ALLOWED TO PERMISSIVELY INTERVENE

"Under Rule 24(b) of the Federal Rules of Civil Procedure, a district court may grant intervention to certain interested parties: '[u]pon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common[.]" *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 784 (6th Cir. 2007). "[A] proposed intervenor must establish four factors before being entitled to intervene: (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest." *Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir.1999). Allowing permissive intervention is highly discretionary. *See Purnell v. City of Akron*, 925 F.2d 941, 951 (6th Cir.1991) ("The denial of permissive intervention should be reversed only for clear abuse of discretion by the trial judge."). However, "Rule 24 is broadly construed in favor of potential intervenors." *Id.* at 950.

### A.  Intervention Is Being Timely Sought

Five factors are relevant to determining timeliness:

(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

3

*Stupak-Thrall v. Glickman*, 226 F.3d 467, 473 (6th Cir. 2000). "No one factor is dispositive, and whether a motion is timely must be considered 'in the context of all relevant circumstances.'" *Howe v. City of Akron*, 2015 WL 8180510, at *4 (N.D. Ohio Dec. 7, 2015) (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)).

### 1.  The Point to Which the Suit Has Progressed Supports Allowing Mr. Augenbaum to Intervene

The "purpose of the timeliness inquiry is to prevent 'a tardy intervenor from derailing a lawsuit within sight of the terminal' and, for this reason, 'a motion to intervene filed during the final stages of a proceeding is not favorably viewed.'" *United States v. BASF–Inmont Corp.*, 1995 WL 234648, at *2 (6th Cir. 1995) (quoting *United States v. City of Detroit*, 2012 WL 6088322, at *15 (E.D. Mich. Dec. 6, 2012)). Here, there is no colorable argument that this motion is untimely.

This motion is being filed because the Court found this case was not being prosecuted. *See* ECF No. 332 at p.1. The Court's findings and conclusions support intervention. Moreover, there is no indication that this Action is in the final stages of proceedings. The Court very recently explained several reasons why "numerous factors [including] the file date support this District moving this matter forward to judgment." *See* ECF No. 331.

### 2.  Mr. Augenbaum Has a Proper Purpose for Seeking to Intervene

Mr. Augenbaum is moving to intervene at the Court's instruction because this case is not being prosecuted, and upon the Court instructing him to do so. That is a proper purpose.

### 3.  The Length of Time Preceding the Application During Which Mr. Augenbaum Knew or Should Have Known of His Interest in the Case Further Supports His Motion to Intervene

Mr. Augenbaum did not sleep on his rights. Instead, he applied to serve in this case promptly upon the Court determining FirstEnergy's interests were not being protected. This factor unquestionably supports a finding of timeliness. The brief lapse between the Court ordering (on

4

August 15, 2022) this motion be filed as soon as practicable and the date of this filing is primarily

a function of the requirement that a motion to intervene "be accompanied by a pleading that sets

out the claim or defense for which intervention is sought." *See* Fed. R. Civ. P. 24(c).

### 4. There Exists No Prejudice to the Original Parties Due to the Proposed Intervenor's Failure to Promptly Intervene

No party to this Action will be prejudiced by Mr. Augenbaum's intervention because he is,

in fact, acting to timely intervene. However, even if that were not the case, granting this motion

will not prejudice any party. This Action is brought derivatively on behalf of FirstEnergy and, by

the very nature of the relief sought, Mr. Augenbaum has the same interest in this Action as other

FirstEnergy shareholders, including all Plaintiffs. Thus, in similar situations, intervention has been

allowed. *See, e.g.*, *Bushansky v. Armacost*, 2014 WL 5335255, at *2 (N.D. Cal. Oct. 17, 2014)

(finding a shareholder seeking to intervene in a demand futility action met the standard for

permissive intervention). Defendants also will not be cognizably prejudiced by intervention under

the circumstances. *See* Fed. R. Civ. P. 23.1(c) ("A derivative action may be settled, voluntarily

dismissed, or compromised *only with the court's approval*." (emphasis added)).

### 5. Any Unusual Circumstances in this Case Militate in Favor of Allowing Mr. Augenbaum to Intervene

The circumstances pursuant to which Mr. Augenbaum is seeking intervention are unusual

and militate in favor of allowing intervention.

*First*, Mr. Augenbaum is intervening at the Court's instruction, after a finding that this

Action is not being prosecuted and after finding that Mr. Augenbaum's counsel "are the best

positioned to serve as lead counsel." ECF No. 320, ECF No. 345 at p.2. That is reason enough to

allow intervention.

*Second*, as noted above, the parties have jointly moved to dismiss this action. Their motion to dismiss the action with prejudice is, at best, careless and could be detrimental to FirstEnergy, further demonstrating why replacement counsel is appropriate here.

Mr. Augenbaum explained in his objection to the Proposed Settlement that the Compensation Claims claims are central to this Action and would not be released even if the Southern District approved the Proposed Settlement. ECF No. 334-4 & Ex. 1; ECF No. 345-1 at 2-3. Those "Compensation Claims" are, indeed, not released—a fact the Parties ignore by instead asserting that "[t]he entry of the Final Approval Order in the Southern District Action fully and finally resolves this Action, requiring dismissal of this case with prejudice." ECF No. 353 at 1.

However, the Parties' stipulation carves out the Compensation claims at the heart of the operative complaint. Settlement §§1(x), 1(z); ECF No. 353-1 at 1-2. The Parties' carveout is an exception to the general rule concerning claim splitting and res judicata. *See* Restatement (Second) of Judgments § 26(1)(a) (1982) (recognizing exceptions to the general rule against claim splitting when "[t]he parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein[.]").  The Southern District's express reservation of the Compensation claims (ECF No. 353-2 ¶¶9-10) also acts as an exception to the rule against claim splitting.  *See* Restatement (Second) of Judgments § 26(1)(b) (recognizing exceptions to the general rule against claim splitting when "[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action[.]").  Having carved out the Compensation Claims at the heart of the operative complaint, the Parties are wrong in asserting that the Final Approval Order "resolves the claims asserted here on the merits."  ECF No. 353 at 6.

That error infects the remainder of the Parties' *res judicata* analysis, which selectively quotes from the Settlement Stipulation and Final Approval Order. For example, the assertion that

"[t]he Southern District also found that, 'by operation of law and of this Judgment,' the Company and its stockholders had 'fully, finally, and forever discharged, relinquished, settled, and released' *the claims asserted in this action* and 'barred and enjoined' the Company's shareholders from 'commencing, instituting, or prosecuting any action or proceeding in any court, tribunal, or forum,' save for any appeal of the Final Approval Order." ECF No. 353 (emphasis added).  The Final Judgment does not include the emphasized portion of the quoted language.  Instead, it enjoins the prosecution of "Released Plaintiffs' Claims (defined [therein]) against each and all of the Released Defendants' Persons (defined [therein])[.]" ECF No. 353-2 ¶¶9-10.[1] Similarly, the Parties assert that the Final Approval Order "resolves the claims asserted here on their merits" and overstate the scope of releases.  ECF No. 353 at 6, 9. It is thus patently false that all claims pending in this Action were "fully resolved" by the Southern District.  *Id.* at 12.

While that error is sufficient to deny the motion, it is not the only error with the Parties also asserting, for example, that the Final Approval Order precludes continuing this Action.  ECF No. 353 at 6.  Not so.  The Final Approval Order, however, expressly states that "[h]ow this ruling affects the Northern District and State Court Actions will be for those courts, respectively, to say. ECF No. 353-1 at 29.

That the Company and the SLC joined in this motion to dismiss undermines their assertion to the Southern District of Ohio that the Compensation Claims are "fully preserved and, to the extent appropriate, proceeding" (SD Ohio ECF No. 185 at 3) because the SLC and the Company are now seeking, for unexplained reasons, to dismiss those claims *with prejudice*. *See* ECF No.

---

[1] Paragraph 7 of the Final Judgment issued by the Southern District, which purports to extinguish all claims asserted in the Southern District Action with prejudice, is inconsistent with the carve-out of compensation claims and will likely be the subject of a motion for reconsideration or an appeal by Mr. Augenbaum.

353 at 1 ("the Final Approval Order has res judicata effect on this Action, and the Action must be dismissed with prejudice."); *id.* at 3-4 ("[t]he Settlement also released ***all claims*** asserted by Plaintiffs in this Action.") (emphasis added); ECF No. 353-3 (proposed order dismissing this Action with prejudice). Dismissal of the Compensation Claims, as to which demand has already been found to be futile, would indisputably harm the ability of the Company or its shareholders to prosecute the Compensation Claims. Under no circumstances should such dismissal with prejudice be ordered. Neither should those claims be dismissed without prejudice because no showing has been made of why that would be appropriate.

In short, the Settlement's carve-out of the Compensation Claims undermines the Parties' fundamental assertion that the claims asserted in this Action are extinguished by the Settlement. *Id.* at 11-13. The Parties' overbroad motion would dismiss the unsettled Compensation Claims *with prejudice* now, as the parties seek, unquestionably and unnecessarily hampering the ability for those claims to be prosecuted on FirstEnergy's behalf. Having chosen to split claims, the Parties should not now be heard to complain that claim splitting is inappropriate here.

**B.      Mr. Augenbaum Has a Substantial Legal Interest in the Subject Matter of the Case**

FirstEnergy is the real party in interest in this Action; Plaintiff is "at best the nominal plaintiff." *Ross v. Bernhard*, 396 U.S. 531, 538 (1970). Any recovery "belong[s] to the corporation and it is bound by the result of the suit." *Id.* Therefore, Mr. Augenbaum's legal interest in the case is indistinguishable from that of all other FirstEnergy shareholders, including Plaintiffs. *See In re Facebook, Inc. S'holder Derivative Privacy Litig.*, 367 F. Supp. 3d 1108, 1130 (N.D. Cal. 2019) (citing *Tansey v. Rogers*, 2016 WL 3519887, at \*3 (D. Del. June 27, 2016); *Arduini v. Hart*, 774 F.3d 622, 627-28 (9th Cir. 2014) (finding that plaintiffs in a shareholder derivative action are in

privity because the corporation is "the true party in interest"); *In re Ambac Fin. Grp., Inc., Deriv. Litig.*, 257 F.R.D. 390, 393 (S.D.N.Y. 2009) (same)).

### C.      Intervention Will Allow Mr. Augenbaum to Protect FirstEnergy's Interest

Shareholder derivative actions "place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (quoting *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949)). The Court has already found that Mr. Augenbaum and "the law firms of MSD and AFT are the best positioned to serve as lead counsel" based upon a factual showing of "significant experience as lead counsel in derivative actions[,]" "prior experience [that] is invaluable" and having "substantial knowledge of the issues at play in this litigation and the discovery that may be necessary to ultimately resolve those issues." ECF No. 345 at p.2. There is no reason to revisit that conclusion.

### D.      Plaintiffs Cannot Adequately Protect FirstEnergy's Interests

The Court has concluded that as Plaintiffs "have made clear that they do not intend to prosecute the matter before this Court, the Court will appoint counsel." ECF No. 332 at p.1. It is thus axiomatic that Plaintiffs cannot adequately protect FirstEnergy's interests.

### E.      The Court Should Exercise Its Discretion and Allow Mr. Augenbaum to Intervene

For the reason the Court instructed this motion be filed so that AFT and MSD can be appointed lead counsel (*see* ECF No. 345 at pp.2-3), the Court should exercise its discretion in allowing Mr. Augenbaum to intervene.

## II.      THIS COURT SHOULD APPOINT MSD AND AFT AS CO-LEAD COUNSEL

The Court has already determined that "the law firms of MSD and AFT are the best positioned to serve as lead counsel." ECF No. 345 at p.2; *see also* Section I.C. For those reasons

and the reasons stated in MSD & AFT's application to serve as co-lead counsel (ECF No. 334-4) and proposed discovery plan (ECF No. 345-1), MSD & AFT should be appointed Co-Lead Counsel.

**III.    THIS COURT SHOULD APPOINT MR. AUGENBAUM AS LEAD PLAINTIFF**

This Court has "the inherent 'authority to appoint a lead plaintiff ... in a derivative action in order to create an efficient case-management structure.'" *In re Chemed Corp., S'holder Derivative Litig.*, 2017 WL 1712530, at \*12 (D. Del. Apr. 25, 2017) (citing *N. Miami Beach Gen. Employees Retirement Fund v. Parkinson*, 2011 WL 12465137, at \*1 (N.D. Ill. July 5, 2011)). Indeed, the other parties to this Action previously agreed that it is appropriate to appoint a lead plaintiff. *See* ECF No. 121 (plaintiffs' joint unopposed motion to designate operative complaint and appoint co-lead plaintiffs and co-lead counsel).

*Chemed* is on point in justifying the need for a lead plaintiff in this Action. Specifically, in *Chemed,* the court appointed a lead plaintiff to "change [the] course" of a litigation that had been "hindered by delay due to parallel proceedings occurring in multiple courts" to ensure that divergent paths would not be pursued by the several plaintiffs. *Id.* Here, similar facts are present, albeit on a different chronology, with the Court initially declining to appoint a lead plaintiff or lead counsel when all plaintiffs appeared to be on the same path. *See* ECF No. 345. The Court more recently found the plaintiffs were not properly prosecuting the Company's claims after the plaintiffs joined a motion to dismiss this case without prejudice. *See* ECF Nos. 331-332. Mr. Augenbaum is stepping forward to prosecute the claims with the understanding that plaintiffs are not being dismissed from this case[2] and that he should be appointed Lead Plaintiff to ensure, much

---

[2]    See    https://www.law360.com/articles/1515188/david-boies-wants-to-take-overfirstenergy-shareholder-suit (quoting Mr. Little, the Court's law clerk, as stating that the Court "plans to appoint additional counsel who he believes will prosecute the case while existing attorneys will remain as part of the suit[.]")

like was the case in *Chemed*, that divergent paths will not be pursued by the different plaintiffs in this Action.

## CONCLUSION

For the foregoing reasons, Mr. Augenbaum respectfully requests that the Court grant his motion to permissively intervene under Rule 24(b)(1), appoint MSD and AFT as Co-Lead Counsel, and appoint Mr. Augenbaum as Lead Plaintiff.

Dated: August 25, 2022

/s/      *W. B. Markovits*
W. B. Markovits, Esq. (0018514)
MARKOVITS, STOCK & DEMARCO, LLC
119 E. Court Street, Suite 530
Cincinnati, Ohio 45202
(513) 651-3700 – Telephone
(513) 665-0219 – Facsimile
E-mail: BMarkovits@msdlegal.com

Jeffrey S. Abraham (*pro hac vice*)
Michael J. Klein (*pro hac vice*)
ABRAHAM, FRUCHTER & TWERSKY, LLP
450 Seventh Avenue, 38th Floor
New York, NY 10123
(212) 279-5050 – Telephone
(212) 279-3655 – Facsimile
E-mail: jabraham@aftlaw.com
E-mail: mklein@aftlaw.com

*Counsel for Todd Augenbaum and*
*Proposed Co-Lead Counsel*

11