UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Jennifer Miller, | ) | CASE NO: 5:20CV1743 |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER AND DECISION** |
| | ) | |
| Michael J. Anderson, et al., | ) | |
| | ) | |
| Defendants. | ) | |

The first amended complaint in this matter asserted that "the total cost to [] FirstEnergy and shareholders of its goodwill, diminished value, civil litigation and scorched-earth investigations may well stretch into the *billions* of dollars." Doc. 31 at 3 (emphasis added). The complaint alleged that executives, directors, and officers of FirstEnergy Corporation engaged in a sprawling bribery scheme that wasted corporate assets, unjustly enriched the defendants, and violated securities law. Specifically, Defendants named in this matter include members of FirstEnergy's Board of Directors, its CEO, its President, the non-executive Chairman of the Board, its Senior Vice President and Chief Legal Officer, its Senior Vice President of External Affairs, and its General Counsel and Chief Ethics Officer. The complaint alleged that these individuals acted in concert to engage in a "racketeering scheme involving the payment of over $60 million by FirstEnergy" to influence Ohio elected officials to pass HB6, legislation that

gave FirstEnergy a $1.3 billion bailout. Despite Plaintiffs' allegations that losses easily climbed into the billions, the parties' settled their dispute for only $180 million.[1]

With that background in mind, the Court acknowledges that "the world is governed more by appearances than by realities[.]"[2] In this litigation that involved what "is likely the largest bribery, money laundering scheme ever perpetrated against the people of the state of Ohio,"[3] appearances surrounding any resolution become all the more important. As more information is uncovered almost weekly, the knowledge of the depth and reach of FirstEnergy's bribery scheme and use of dark money to influence Ohio elected officials continues to expand:

▪ *Utility That Bribed Ohio Regulators Secretly Bankrolled Republican Mike DeWine's 2018 Governor Bid, Records Show*[4]

▪ *Ex-First Energy executives, Ohio utility regulator charged by state in bailout and bribery scandal*[5]

▪ *Fired FirstEnergy execs indicted in $60 million Ohio bribery scheme; regulator faces new charges*[6]

▪ *FirstEnergy made secret $1 million payment in 2017 to support 'Husted campaign' in Ohio*[7]

---

[1] As detailed later in this order, actual recovery to FirstEnergy was well below that $180 million once attorney fees of roughly $36 million were paid to Plaintiff's counsel.

[2] Quote most often attributed to former Secretary of State Daniel Webster.

[3] Quote taken from a press conference given by United States Attorney for the Southern District of Ohio David DeVillers.

[4] https://www.motherjones.com/politics/2024/04/firstenergy-bribery-scandal-ohio-mike-dewine-jon-husted-documents/ (last visited 4/26/2024).

[5] https://ohiocapitaljournal.com/2024/02/12/ex-first-energy-executives-ohio-utility-regulator-charged-by-state-in-bailout-and-bribery-scandal/ (last visited 4/26/2024).

[6] https://apnews.com/article/firstenergy-ohio-bribery-481071b407b54fc7ca2e34a9bd5263de (last visited 4/26/2024).

[7] https://apnews.com/article/bribery-investigation-ohio-lieutenant-governor-jon-husted-d9012cc1a46a85129c596a449301c345 (last visited 4/26/2024).

> ▪ *FirstEnergy paid $300k to nonprofit tied to Huffman*[8]
>
> ▪ *Ohio indictments provide a better picture of squalid relationships that spurred massive scandal*[9]
>
> ▪ *Regulators. DeWine aides. FirstEnergy execs: Bribery witness list stuffed with statehouse regulars*[10]

The above is only a small sample of media accounts and information that has become known *after* settlement was reached in this matter. In fact, as recently as May 6, 2024, FirstEnergy was ordered in other litigation to release the results of its internal investigation after fighting to withhold it for multiple years.[11] This ever-growing release of additional information surrounding the scandal should serve as a reminder that the appearances surrounding the settlement in this matter have given the people of Ohio far, far less than they deserve – both in process and substance.

Pending before the Court is the parties' joint motion to lift the stay in this matter and dismiss these proceedings with prejudice in favor of the settlement that was approved before the Southern District of Ohio in Case Number 2:20-cv-4813 and now affirmed on appeal. For the reasons stated below, the motion is reluctantly granted.

---

[8] https://www.limaohio.com/top-stories/2024/04/23/firstenergy-paid-300k-to-nonprofit-tied-to-huffman/ (last visited 4/26/2024).

[9] https://ohiocapitaljournal.com/2024/02/14/ohio-indictments-provide-a-better-picture-of-squalid-relationships-that-spurred-massive-scandal/ (last visited 4/26/2024).

[10] https://www.cleveland.com/open/2024/04/regulators-dewine-aides-firstenergy-execs-bribery-witness-list-stuffed-with-statehouse-regulars.html (last visited 4/26/2024).

[11] See https://finance.yahoo.com/news/judge-orders-firstenergy-release-findings-005131939.html (last visited 5/15/2024). Despite that order, it appears that the dispute over releasing the results of that internal investigation will continue on for the foreseeable future. See https://www.cleveland.com/news/2024/05/firstenergy-fights-release-of-reports-documenting-internal-investigation-of-house-bill-6-scandal.html (last visited 5/16/2024).

The operative complaint in this litigation alleges that the people of Ohio were directly impacted by the FirstEnergy bribery scheme in several ways. First and foremost, the bribery scheme was designed to influence the passage of House Bill 6, a bill described in the complaint as providing "a billion-dollar-bailout for FirstEnergy's uncompetitive power plants funded by monthly ratepayer surcharges." Doc. 75 at 10. When a statewide ballot referendum threatened to repeal House Bill 6, FirstEnergy funneled more than $38 million dollars to its alleged co-conspirators to assist in defeating the citizen initiative.

As alleged, the bribery scheme was designed to *directly* take money out of the pockets of millions of Ohioans. Moreover, when the scheme came to light, then Speaker of the House Larry Householder was criminally indicted and subsequently convicted for his role. At the time of this order, additional criminal charges are pending against FirstEnergy executives Charles Jones and Michael Dowling. Moreover, two others, Neil Clark, a lobbyist, and Sam Randazzo, the former PUCO Chairman, had charges against them dropped following their deaths. Through the diligent work of the media and subsequent criminal investigations, the public has heard allegations that their elected officials were for sale to the highest bidder and that House Bill 6 was only passed through the transfer of millions and millions of dollars in dark money funneled through entities but ultimately paid by FirstEnergy.

With respect to this derivative suit, the parties engaged in litigation simultaneously before this Court and the Southern District of Ohio, with the first filed complaint being filed in this Court. From this Court's review, Plaintiffs were eager to litigate the matter before this Court when the undersigned mandated an expedited

4

discovery schedule. However, when the parties settled the matter with almost no discovery, their tune changed dramatically.[12] A review of the transcripts of proceedings before this Court and the Southern District reveals why the parties may have desired to have their settlement reviewed by another District. In short, this Court offered an honest assessment when the parties indicated a desire for early mediation. The Court indicated that it would be extraordinary if the parties could demonstrate that a settlement was fair and reasonable despite the following:

- incomplete written discovery

- no testimony under oath from any Defendant or other witness

- incomplete privilege logs detailing withheld documentation

- an incomplete forensic examination to identify possible missing communications contained on Defendant Charles Jones' personal electronic devices and

- an inadequate period to review and analyze the documents that were provided.

It is apparent from the parties' actions that the Court's candor caused the parties to seek approval of their settlement from another District.

If the above were not alone sufficient to undermine the confidence in the *appearance* of the proceedings and their resolution, additional information undermines that appearance when one reviews the fairness hearing in the Southern District. Before delving into the fairness of the settlement, the district judge presiding over the matter

---

[12] Nearly all of the information publicly revealed over the past few months it appears was wholly unknown by the parties at the time of their settlement.

5

revealed that counsel for many of the FirstEnergy executives and Directors[13] was a former law clerk for the judge *and* that her spouse was a *current* law clerk for the judge.[14] The court there then continued: "I know all of you have researched my history of fairness hearings, and you've all seen a couple of things. One is that I have pretty much been consistent. Once the parties agree, I *defer* to the agreement."[15] (emphasis added).[16] Given the above facts, it can hardly be surprising that the parties practically sprinted to the Southern District to seek approval. Moreover, a mere 19 days after the fairness hearing, their settlement was approved, and plaintiffs' counsel received roughly $36 million in attorney fees from the award while none of the named Defendants were required to answer a single question under oath.

The statements above stand in stark contrast to what the parties heard before this Court. At the first hearing in this matter, the Court stressed the need for transparency and openness and informed that parties that "[w]e're not going to keep things off the docket or out of the record if it isn't required." Doc. 166 at 20. Further, when the parties suggested mediation *prior* to any meaningful discovery, the Court made its view on such a process quickly known to the parties:

---

[13] The docket reflects that counsel represented FirstEnergy Corp., Michael J. Anderson, Steven J. Demetriou, Julia Johnson, Donald Misheff, Thomas Mitchell, Christopher Pappas, Sandra Pianalto, Luis Reyes, Leslie Turner, Paul Addison, Jerry Sue Thornton, William Cottle, George Smart, James Pearson, Steven Strah, K. Jon Taylor, Robert Reffner, and Ebony Yeboah-Amankwah.

[14] The Court does not suggest anything ethically improper occurred with respect to these facts. However, given the nature of the case, perhaps a heightened standard would have better served the people of the Ohio.

[15] See Doc. 38, Page ID # 1379, Case No. 2:20CV5876 (S.D. Ohio).

[16] While the Sixth Circuit "afford[s] the district court 'wide discretion' in making that assessment," *In re Wendy's Co. S'holder Derivative Action*, 44 F.4th 527, 536 (6th Cir. 2022), no precedent supports *deferring* to the parties' agreement.

> So I'm more than concerned about the vigorous or adequate prosecution of this case if you haven't even done the most what I would characterize rudimentary things that you would need to undertake before what I think is somewhat of a mad rush to mediate this case.
>
> …
>
> Counsel, I don't want to get into a debate back and forth with you. I guess maybe you and I are just going to have to agree to disagree because I don't see how you can assess the relative responsibility, alleged responsibility, of any officers or others without taking their depositions, without seeing all the paper discovery.
>
> I candidly can't grasp the idea that you would know enough about this case against the relative -- again, the relative position of the defendants to in any way mediate, settle, assess responsibility, if any, liability, if any, on what you now know.

Doc. 235 at 8, 11.

Faced with this Court's skepticism and the Southern District's admitted history of deference to settlement agreements, plaintiffs' counsel – seeking more than $40 million in attorney fees – of course chose what they undoubtedly believed to be the path of least resistance. The result was a fairness hearing that lasted less than three hours[17] in which 1) no evidence was received, 2) no witness testimony was taken, and 3) formal, written approval was obtained in less than three weeks.

The Court is mindful that the Sixth Circuit has now affirmed the Southern District's approval of the parties' settlement. As a result, this Court is legally required to find the matters herein are precluded by that agreement. As a result, the stay must be lifted, and this matter must be dismissed. With that said, the Court notes that it has now been more than 100 years since Supreme Court Justice Louis Brandeis penned his most famous statement in a 1913 Harper's Weekly article titled "What Publicity Can Do."

---

[17] Docket No. 193, Page ID 4946, Case No. 2:20CV4813 (S.D. Ohio).

7

Brandeis' statement rings just as true today. "Sunlight is said to be the best of disinfectants." The people of Ohio deserved to have sunlight cast upon *all* aspects of the FirstEnergy bribery scheme. Instead, the public is left with proceedings that allowed a shroud of darkness to remain in place covering many of the details surrounding FirstEnergy's bribery scheme to occur – a shroud that is only slowly being lifted by an aggressive media and subsequent criminal proceedings. The people of Ohio – the ultimate victims of the FirstEnergy bribery scheme – deserved much, much more, but the law does not allow this Court to compel further proceedings. Accordingly, this matter is hereby DISMISSED.

    IT IS SO ORDERED.


May 17, 2024                                              /s/ *Judge John R. Adams*
Date                                                    JUDGE JOHN R. ADAMS
                                                        UNITED STATES DISTRICT COURT